THOMAS LARKIN, Plaintiff, *v.* THE VILLAGE OF BROCKPORT, Defendant.

*State employee — when a village is a necessary party to an agreement fixing his compensation — chapter 380 of the Laws of 1889, inapplicable to an existing contract — right of one employee to employ another.*

When it is the province of the State to employ a person and the duty of a village therein to pay him for his services, the village is a proper and necessary party to an agreement with such person fixing the rate of his compensation, which may be fixed either by an express or an implied agreement.

Chapter 380 of the Laws of 1889 has no application to a person who was at the time of its passage in the employ of a city under an implied contract that he should receive forty-five dollars per month for his services.

Where an employee assumed to have his minor son assist him, without the knowledge and without the request of his employer, in doing work which he had himself agreed to do, he is not entitled to recover for the labor of his son.

CROSS-MOTIONS by the plaintiff, Thomas Larkin, and by the defendant, The Village of Brockport, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the

first instance, upon the verdict of a jury in favor of the plaintiff, and upon the decision of the court dismissing the plaintiff's second cause of action, rendered after a trial at the Monroe Circuit on the 15th day of May, 1894.

*George P. Decker*, for the plaintiff.

*William F. Cogswell*, for the defendant.

LEWIS, J. :

The Legislature, in the year 1887, upon the solicitation of the citizens of the village of Brockport, passed an act making an appropriation of money for the construction of a lift bridge over the Erie canal in said village. It was provided in the act that the operation of the bridge should be under the direction of the Superintendent of Public Works, but that the expense incurred in operating the bridge should be paid by the village of Brockport.

The bridge was constructed, and the Superintendent of Public Works, in the spring of 1888, appointed the plaintiff as one of two men to operate it, they to alternate in the operation of the bridge and work twelve hours a day each. The village trustees, by resolution passed at a meeting of the board June 5, 1888, fixed the plaintiff's compensation at forty-five dollars per month. He was informed of the adoption of the resolution, worked through the season, and accepted payment for his services from the village from month to month during that season at that rate.

In the spring of 1889, a few days before the opening of navigation upon the canal (which that year was on the first of May), the Superintendent again appointed the plaintiff to attend the bridge.

The Superintendent testified : " In the spring of that year I recollect the appointment of Thomas Larkin as bridge tender at Brockport. He was appointed about the first of May. I couldn't say just the day. His appointment was to commence or take effect at the opening of navigation.

" The canal opened that year the first of May, as I remember. * * * No arrangement was made between Larkin and me as to how much he was to receive per day, or what he should be paid for his services. Nothing was said about it, nor as to how long he should continue as bridge tender."

On the 30th day of April, 1889, the board of trustees of the village passed a resolution fixing the plaintiff's compensation for the year 1889 at the same rate as for the previous year.

The plaintiff testified that: "Notwithstanding the fact that this was a hard-working bridge, and that I knew all about it, and that I knew that the village was paying $1.50 per day for the twelve hours' work, I applied to the Superintendent for reappointment in the spring of 1889. I was desirous of obtaining the job."

The plaintiff presented to the defendant, during the time he was employed in the year 1889, monthly bills for his services in conformity to the requirements of the village ordinances, and received his pay monthly. There was stated in the bills the number of days he had worked the preceding month, and the amount of his compensation was computed at one dollar and fifty cents per day. He duly verified each bill by affidavit to the effect that the items of the account were correct as to the services; that they were rendered for the village of Brockport.

On the 6th of June, 1889, an act of the Legislature was passed, the first section of which is as follows: "From and after the passage of this act the wages of day laborers employed by the State, or any officer thereof, shall not be less than $2 per day; and for all of such employed otherwise than day laborers, at a rate of not less than 25 cents per hour."

This act was pending in the Legislature at the time of plaintiff's employment in 1889, of which fact he was then aware. Prior to the passage of the act, he had no communication personally with the board of trustees, nor with any of its members individually, about the rate of wages he was to receive. He testified that after the passage of the act he talked with individual members of the trustees about his wages; the particulars of the conversations are not stated in the record.

He made no demand upon the board, as such, for the increased wages mentioned in the act, but received his monthly payments as heretofore stated, at the rate of forty-five dollars per month. After the termination of his employment in the year 1889, he presented to the State Board of Claims a bill against the State for the difference between the amount he had received from the defendant and the wages fixed by the act of 1889. His claim was rejected by said

board as not being a legitimate charge against the State; and he thereafter, in the year 1893, commenced this action against the defendant, claiming to recover at the rate of twenty-five cents per hour for twelve hours' services per day, less the amount paid him by the defendant; and, in addition thereto, he claimed to recover, as a second cause of action, compensation for the services of his minor son as his assistant in operating the bridge during a part of the year 1889.

At the close of the evidence the defendant's counsel asked for a nonsuit, upon the ground, among others, " that plaintiff's services were rendered under an implied contract to work for $45 per month, which could not be increased by chapter 380 of the Laws of 1889."

The court denied defendant's motion as to the first cause of action, and granted a nonsuit as to the second cause of action. The defendant duly excepted to the court's refusal to grant a nonsuit as to the first cause of action, and requested the court to direct a verdict for the defendant on the first cause of action, which was denied, and an exception duly taken.

Plaintiff's counsel thereupon asked the court to direct a verdict for the plaintiff for the sum of $279.30, which motion was denied, and the defendant's counsel thereupon asked to go to the jury upon the question of waiver. The plaintiff's counsel objected to the court entertaining the motion, on the ground that the defendant had waived its right to go to the jury by asking for a direction of a verdict in its favor. The objection was overruled. The court thereupon charged the jury. At the close of the charge the defendant's counsel " asked the court to charge the jury that if they find that the plaintiff performed the services under and in pursuance of a resolution of the board of trustees fixing the amount of wages of bridge-tenders at $45 per month, and presented his bills therefor to the trustees for payment, stating the amount due him at the rate fixed by said resolution, and said bills were paid in full for the time he worked, it constituted an implied contract on his part which could not be affected by the subsequent act of the Legislature.

" By the court: I decline to vary my charge upon that point. The defendant duly excepted." Nothing had, in fact, been said in the charge upon the question of an implied contract. Defendant's counsel again requested the court to charge the jury, that if they find

the facts as stated in the foregoing request to find, "it is for them to say whether the plaintiff did not work under an implied contract, and that if they find that he did, he cannot recover." The court: "If you find from the evidence that he worked and agreed to work for $45 per month, and that was all he was to receive, then he cannot recover any sum beyond that amount." The defendant excepted to the refusal to charge as requested.

It being the province of the State to employ the plaintiff, and the duty of the defendant to pay him for his services, the defendant was a proper and necessary party to an agreement with the plaintiff fixing the rate of his compensation. It might be either an express or an implied agreement. There was evidence tending to show that there was an implied contract that plaintiff's compensation for the year 1889 was to be at the rate of forty-five dollars a month. The question of an implied contract should have been submitted to the jury, unless the defendant waived the right to go to the jury by the request made by its counsel to go to the jury upon the question of waiver, which request was made previous to the charge to the jury, and after his ineffectual effort to secure a direction of a verdict for the defendant upon the first cause of action stated in the complaint.

The request to go to the jury upon the question of waiver was objected to by the plaintiff's counsel as stated, and the objection was overruled. It does not appear from the record that the defendant's counsel asked to have any other question submitted to the jury previous to the charge; but after the conclusion of the charge he made the requests to charge heretofore stated, the question of waiver and the requests to charge probably covered the same ground, but, if not, the refusal to charge as requested was not placed upon the ground that the defendant was estopped by the former request from having any other question submitted.

Whether there was an implied contract was an important and controlling question, and it should, we think, have been submitted to the jury.

If the work performed was under an implied contract that he should receive forty-five dollars a month, the law of 1889 had no application to the case. (*Clark* v. *State*, 142 N. Y. 101.)

The verdict for the plaintiff was for the sum of $278.30, being the difference between the amount of the services at twenty-five

cents per hour and the amount received by the plaintiff from the defendant.

No employment of the infant son of the plaintiff for the year 1889 by the Superintendent was proven. That official seems to have insisted that the work of operating the bridge should be performed without an assistant, and when the plaintiff declined to do the work without the aid of an assistant he was discharged.

The Superintendent testified that he only appointed two men to operate the bridge. The plaintiff having assumed to have his son assist him in doing the work he had himself agreed to do, and that, so far as appears, without the knowledge and, as stated, without the request, of the canal officials, who were the only persons having authority to employ laborers on the canal, the trial court, we think, correctly held that he was not entitled to recover for his son's labor.

The defendant did not employ the boy. The plaintiff testified that he talked with the president of the village about the necessity for a helper, but he does not say that the president authorized him to employ the boy; it does not appear that that officer had any authority to make such a contract. Defendant's motion for a new trial should be granted, with costs to abide the event, and plaintiff's motion for a new trial denied.

Dwight, P. J., Haight and Bradley, JJ., concurred.

Defendant's motion for new trial granted, with costs to abide the event, and plaintiff's motion denied.