THOMAS LARKIN, Plaintiff, *v.* THE VILLAGE OF BROCKPORT, Defendant.

| 87 | 573 |
| 91 | 26 |
| 87 | 573 |
| 32ap | 129 |

*Implied contract — wages of a State employee under chapter* 380 *of* 1889 — *existing implied contract, not abrogated.*

The acts of the parties, not the secret operations of their minds, are the elements of which implied contracts are composed.

Chapter 118 of the Laws of 1887 provided for the construction of a lift bridge over the canal at Brockport, the operation of which was to be under the direction of the Superintendent of Public Works, the expense of operation to be paid by the village. On June 6, 1889, chapter 380 of the laws of that year was passed, which fixed the wages of laborers employed by the State at not less than two dollars a day or twenty-five cents an hour.

Thomas Larkin had been employed as bridge tender at the lift bridge during the season of 1888 at a salary fixed at forty five dollars per month. He was reappointed in 1889, about two weeks before the opening of the canal on May first. At this latter date the trustees of the village of Brockport fixed his salary at forty-five dollars per month, and he learned of their action. Larkin then knew that chapter 380 of the Laws of 1889 was pending under consideration in the Legislature, but he accepted the salary fixed and signed monthly receipts therefor on several occasions.

After chapter 380 of the Laws of 1889 became a law, he told the village president and some of the trustees that he wanted his extra pay, and thereafter brought an action to recover it.

*Held,* that the facts justified the conclusion that the plaintiff was working under an implied contract to accept the same wages that he received in 1888, and that chapter 380 of the Laws of 1889 did not apply to the case and did not abrogate the contract existing between the village and Larkin.

MOTION by the plaintiff, Thomas Larkin, for a new trial in a case containing exceptions, ordered to be heard at the General Term in the first instance upon a nonsuit directed by the court after a trial at the Monroe Circuits on the 7th day of January, 1895.

*George P. Decker,* for the plaintiff.

*John N. Drake,* for the defendant.

WERNER, J.:

In 1887 the Legislature of this State passed an act (Chap. 118) making an appropriation for, and directing the construction of, a lift bridge over the Erie canal in the village of Brockport. By the terms of the act the operation of said bridge was to " be under the

direction of the Superintendent of Public Works, but the expenses thereof shall be paid by the village of Brockport," and the authorities of the said village were authorized to levy taxes for that purpose.

The bridge was constructed and in the spring of 1888 the plaintiff was appointed bridge tender by the Assistant Superintendent of Public Works. Soon after such appointment the salary of said bridge tender was fixed by the board of trustees of said village at forty-five dollars per month or one dollar and a half per day, at which rate plaintiff was paid monthly during that entire season, for twelve hours' work each day.

Before the opening of the canal season of 1889 the plaintiff sought and obtained appointment to the same position for the season of that year. The canal opened on or about May first and plaintiff was appointed about ten days or two weeks prior to that time. There was no talk between the Assistant Superintendent of Public Works and the plaintiff as to the rate of wages or who should pay them  Plaintiff knew that there was then pending in the Legislature an act which subsequently, and on June sixth, became chapter 380, Laws of 1889, and which provided that "from and after the passage of this act wages of day laborers employed by the State, or any officer thereof, shall not be less than two dollars per day and for all such employed otherwise than day laborers, at a rate of not less than twenty-five cents per hour."

About two weeks after the plaintiff began work the board of village trustees again fixed the wages at forty-five dollars per month. Plaintiff received no formal or official notification of this action, but obtained knowledge of it from outside sources. He thereafter signed and verified his monthly bills, signed receipts and indorsed orders for his wages, all of which papers were prepared for his signature by Mr. Drake, the clerk of the village board. Immediately after said chapter 380 became a law plaintiff had talks with the president and two trustees of the village, in which he stated that he wanted his extra pay. On various occasions thereafter, when signing the necessary papers to obtain his monthly wages, he called said Drake's attention to his claim for additional compensation under the law above referred to.

At the close of plaintiff's case the defendant moved for a nonsuit

upon the grounds which appear upon the record, and the motion was granted. It is evident that the learned trial justice took the view that said chapter 380 did not apply to this case, because the plaintiff was working under an implied contract for the same wages he had received the previous year, as fixed by the village trustees two weeks after his appointment in 1889.

If plaintiff's case is governed by the provisions of the act in question he was entitled to just double the amount of pay he actually received.

The plaintiff was unquestionably an employee of the State, and in the absence of a pre-existing contract, express or implied, to work for a different rate of wages, was entitled to the compensation fixed by said chapter 380. (*Clark* v. *State*, 142 N. Y. 105.)

But if there was an express or implied contract between plaintiff and defendant as to the rate of wages to be received by the former, it was not affected by the subsequent passage of the act in question. (*Clark* v. *State, supra.*)

There is no express contract. Was there an implied contract? The circumstances of the case, as disclosed by the present record, seem to require an affirmative answer to this question, unless the decision of this court upon the former appeal, reported in 81 Hun, 364, is a determination that there was a question of fact for the jury.

Upon the first trial the cause of action now under consideration was sent to the jury without instructions upon the law relating to implied contracts. Defendant's requests for a proper charge upon that subject were denied. Upon the assumption that there was no express contract, and that the facts warranted the submission of the case to the jury, this court held that defendant was entitled to have the jury instructed upon the law of implied contracts. But the question whether, upon the facts and circumstances disclosed by the record, the trial court would have been justified in holding as matter of law that there was an implied contract, was not before the court. We are, therefore, called upon to consider the case upon the record as now presented. From this it appears that plaintiff knew what the wages had been the year before. After the village board had fixed the wages at forty-five dollars per month he accepted, without protest or objection, that sum for his first month's pay. He says that he expected to get more in case the pending bill in question

should become a law. He admits that he said nothing about it to any of the village officials.

The action of the village board in fixing his wages, as above stated, was taken about two weeks after he entered upon his duties. While the record does not disclose just when plaintiff received knowledge of this fact, it may fairly be inferred that in a village like Brockport, a resident particularly affected by any action of the trustees would be advised thereof through the usual channels of publication and general discussion. Moreover, plaintiff's own statement is a practical admission that he had knowledge of the action of the board immediately after it was taken. He made no protest or suggestion until after the sixth day of June, when said chapter 308 became law. Then, instead of making an immediate formal demand upon the board for increased pay in accordance with the terms of the statute, he contented himself by conversing in a casual way with individual trustees. It also appears that he talked with Drake, the village clerk, about the passage of this law, and claimed to be entitled to increased pay, but never made any formal demand. Upon Drake's statement that he had no authority to pay more, and that it was for the trustees to say what should be done, plaintiff continued to accept his wages from month to month precisely as he had done in 1888.

The presentation of plaintiff's claim to the State Board of Claims, after the close of the season of 1889, while not in any sense controlling of his actual rights, reflects a strong light upon his apparent understanding of the situation prior to the decision of the State board. Notwithstanding his statement that he always thought the village would have to pay, this circumstance, in connection with others, indicates that plaintiff had no serious thought of attempting to collect extra pay from the village until after his attempt to collect from the State. His own testimony indicates that his efforts to obtain this increase were not those of a man standing upon his supposed legal rights, but rather evinced a desire to get the increased pay if he could make the authorities believe that he was entitled to it.

When plaintiff was presented with the vouchers for his first month's pay, he had notice that the village authorities understood that he was to work under the same arrangement which existed in

1888. Plaintiff's acceptance of the money without protest expressed his acquiescence in that understanding and in the action of the board taken in May, 1889. In this transaction we find the circumstances upon which the law rests an implied contract. The rights of the parties became fixed then and there. The mental reservations of the plaintiff as to the possible effect of the proposed State law are not in any sense an element of this implied contract. (*Riley* v. *Mayor, etc., of N. Y.*, 96 N. Y. 331.) The acts of the parties and not the secret operations of their minds are the elements of which implied contracts are composed.

We agree with counsel for the plaintiff that the cases in which an implied contract has been based upon uninterrupted and continuous service beyond the period of the original contract are not controlling here. There was here no such continuance. But the knowledge which both parties had of the previous contract, considered in connection with the action of the village board in May, 1889, and plaintiff's acquiescence therein, furnish ample ground for holding that at the time of the passage of said chapter 380 there was an existing implied contract between the parties which was not affected by the passage of said act. If said act had become a law before the fixing of plaintiff's wages by the village trustees, and before knowledge thereof by him, or his acceptance of the sum fixed, we would have a case from which a contract to work for forty-five dollars per month might be implied, but such circumstances would clearly present a question of fact for the jury because of conflicting inferences which might be drawn from the existing conditions. Here there are no conflicting inferences. Up to the moment when chapter 380 became a law plaintiff's acts were utterly at variance with the alleged operations of his mind. His rights are to be determined by his acts and the apparent understanding of the parties prior to the passage of said law. His subsequent conduct can have no more effect upon the implied contract than could an attempted repudiation of a written contract plain in its terms. As to their binding effect both classes of contracts rest upon the same principles.

The case of *McCarthy* v. *Mayor, etc.* (96 N. Y. 1), is not like this in its facts, but the language of the court in discussing the principle of implied contracts is particularly applicable to this case: An

agreement for extra pay may be implied from circumstances; but "such an implication arises only when the services are rendered under circumstances authorizing an expectation of compensation therefor, or the inference that they would not otherwise have been rendered."

What circumstance was there in this case to authorize the expectation of increased compensation, except the pendency of a proposed statute which so far as plaintiff knew might never ripen into a law?

It is not pretended that the pendency of this law was a circumstance upon which plaintiff definitely based his rights. If he desired to reserve to himself the prospective benefits of this law, he should have communicated the fact to defendant's agents or officers.

This question is not met by the suggestion that the defendant is the mere debtor and not the employer of the plaintiff. While it is true that the State was the employer, the defendant was by the very terms of the statute, which required it to pay the plaintiff, necessarily made a party to the contract of employment. Plaintiff had not only legal but actual notice of this fact, and he cannot now be heard to say that there was no privity of contract between him and the defendant.

The statute required the Superintendent of Public Works to employ the necessary working force on this bridge, but it also directed the defendant to pay for the same; and while it is unnecessary to decide what plaintiff's rights would have been, had the State Superintendent assumed to fix plaintiff's compensation, we are convinced that the statute, by implication at least, authorized the making of a contract between the plaintiff and defendant.

Was there any inference that plaintiff would not render the service if he did not get the pay? We think not. On the contrary, every inference which may properly be indulged in from the testimony indicates that the plaintiff was ready to begin and continue his work whether he obtained increased pay or not.

The *Clark* case differs from the one before us in the important circumstance that no rate of compensation was ever fixed by the State or agreed upon between the parties, except as it was fixed by the statute passed subsequent to Clark's employment. So far as appears he had never been employed by the State before, and simply received and receipted for the same wages which he and others were getting, and had previously received for similar work. Noth-

ing had occurred prior to the passage of said chapter 380 from which a contract could be implied, but the acceptance by Clark without objection of his monthly wages. This, in the absence of a finding, or a request to find, a contract from the facts disclosed, was sufficient authority to treat the case as one of employment without any contract as to compensation, and, therefore, notwithstanding Clark's acceptance of less than was provided by the statute, he was held entitled to its provisions.

Here the acceptance by Larkin, after the passage of said chapter 380, of the wages fixed by the village board is an incident which is no more controlling than was the same act in the *Clark* case. It is what Larkin did prior to the passage of the act which gave the trial court the right to say as matter of law that he was bound by an implied contract which was in force when chapter 380 became a law.

This is not in conflict with *Kehn* v. *State* (93 N. Y. 291) or *Riley* v. *Mayor* (96 id. 331).

In the former of these cases the attempt of the Superintendent of the Capitol to reduce the plaintiff's pay was in plain contravention of the statute which was in force at the time of his employment.

In the case of *Riley* v. *Mayor* (*supra*) it was held that by the act providing for the organization and control of the New York fire department, the fire commissioners were authorized to transfer employees of the department from one class of duties to another; and in case of such transfer to a class of duties less profitable to the department the employee was entitled only to the compensation adapted to the duty required. It was also held, however, that in such a case the employee's acceptance, without objection, of the salary attached to the inferior position, was a waiver of the right to claim the salary of the superior one.

Plaintiff's counsel contends that the wage act in question superseded any contract which may have existed prior to its enactment. We do not concur in this view. The defendant as a municipality of course derived its powers from the Legislature; but one of these powers was created by chapter 118, Laws of 1887, requiring it to pay the operating expenses of this bridge, and authorizing it to levy taxes for that purpose.

Assuming that the Legislature had authority to abrogate any existing contract by subsequent enactment, a power which we do

not concede (Const. U. S. art 1, § 10), it would be an unwarranted stretch of the rules of judicial construction to hold that such a result is to be obtained by mere implication when the absence in the statute of language disclosing such an intent clearly indicates that it did not exist.

The ruling of the court at folio 36 was not erroneous, but even if so it was not prejudicial to plaintiff.

Plaintiff's conversations with individual trustees of the defendant would not work a rescission of any existing contract. But even if we assume that evidence of these conversations was competent for that purpose it appears at folio 23 that plaintiff had already testified in substance to these same conversations, and was, therefore, not prejudiced by the ruling.

Plaintiff's motion for a new trial is, therefore, denied and the judgment of the trial court affirmed, with costs.

LEWIS, BRADLEY and WARD, JJ., concurred.

Motion for a new trial denied and judgment directed for the defendant on the nonsuit.