PEOPLE ex rel. WHEELER et al., Election Com'rs, **v.** HOLMES, County Treasurer.

(Supreme Court, Special Term, St. Lawrence County.   June, 1912.)

1. COUNTIES (§ 134*)—ELECTION OFFICERS—COMPENSATION.

Under Election Law (Consol. Laws 1909, c. 17) § 193, as amended by Laws 1911, c. 649, providing that the salaries of commissioners of elections outside of the city of New York shall be fixed by the board of supervisors appointing the commissioners, and section 197, as amended by the same act, providing that the board of elections shall have power to fix the number, salaries, etc., of clerks and employés, and to appoint and remove them at pleasure, an agreement between the board of supervisors and the board of elections that the salary fixed by the board of supervisors should include all expenses for necessary labor and clerk hire was valid, and, while it did not limit the power of the board of elections to appoint and remove employés, it prevented such board from making their salaries a county charge.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 202;  Dec. Dig. § 134.*]

2. COUNTIES (§ 132*)—ELECTION OFFICERS—COMPENSATION.

An agreement between a board of supervisors and a board of elections that the salaries of commissioners of election, fixed by the board of supervisors, should include all expenses for labor and clerk hire, was not annulled, or its performance rendered impossible, by the subsequent enactment of Laws 1911, c. 891, increasing the duties of the board of elections.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 208;  Dec. Dig. § 132.*]

3. COUNTIES (§ 134*)—ELECTION OFFICERS—COMPENSATION.

An agreement between a board of supervisors and a board of elections that the salaries of the commissioners of election, fixed by the board of supervisors, should include all expenses for labor and clerk hire, could not be terminated by the board of elections without the consent of the board of supervisors.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 202;  Dec. Dig. § 134.*]

4. COUNTIES (§ 134*)—ELECTION OFFICERS—COMPENSATION.

Even if Election Law (Consol. Laws 1909, c. 17) § 193, as amended by Laws 1911, c. 649, providing that the salaries of commissioners of elections outside New York City shall be fixed by the board of supervisors appointing the commissioners, and may be changed from time to time by resolution of that board, should be read in connection with County Law (Consol. Laws 1909, c. 11) § 12, subd. 5, as amended by Laws 1911, c. 359, authorizing boards of supervisors to fix the salary of county officers, but providing that the salary or compensation of an officer or employé elected or appointed for a definite term shall not be increased or diminished during the term, the board of supervisors could grant an allowance for clerk hire to a board of elections, who had agreed that the salaries of the commissioners of election should include expenses for clerk hire.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 202;  Dec. Dig. § 134.*]

Mandamus by the People, on relation of Fred J. Wheeler and another, as Commissioners of Election of the County of St. Lawrence, against George M. Holmes, as County Treasurer. Peremptory writ denied.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Lawrence Russell, of Canton, for relators.

George H. Bowers, of Canton, for defendant.

WHITMYER, J.   The relators were appointed commissioners of election of the county of St. Lawrence by the board of supervisors of said county on the 1st day of August, 1911, for a term to- expire on the 1st day of January, 1913, under the provisions of chapter 649 of the Laws of 1911, which amended the Election Law (Laws of 1909, c. 22 [Consol. Laws 1909, c. 17]) generally.   As such commissioners, they constituted the board of elections of the county.   Laws 1911, c. 649, § 190.   Under the law, the board of supervisors of the county had the power to fix the salaries of the commissioners and to change them from time to time by resolution (Id. § 193), and the board of elections had the power to fix the number, salaries, duties, and rank of its chief clerks, clerks, assistant clerks, and stenographers, and to appoint, and at pleasure remove,. and to fix the salaries of, all employés of the board (Id. § 197). The appointments were made and the salaries were fixed by the board of supervisors under an agreement with the commissioners. that such salaries, $800 per year for each commissioner, were to include all their expenses for necessary labor and clerk hire.

On October 18, 1911, after the commissioners had entered upon the performance of their duties, chapter 891 of the Laws of 1911, entitled "An act to amend the Election Law in relation to nominations and primaries," was passed.   The act became effective November 15, 1911.   It did not repeal the law under which relators. were appointed commissioners, but added to their duties as such. They continued in office, and on December 10, 1911, sent a report. to the board of supervisors, as required by the law under which they were appointed, which, so far as material here, contained the following:

"Owing to the enactment of the Primary Law, which was not anticipated when the salary and agreement with the board was made, and the very large amount of labor added to the board's duties, and it being impossible for the board to do this additional work without help, we have employed a clerk at a salary of $600 per year and a stenographer at an expense of $400 per year. The board would be pleased if your board would make provision for the payment of the salaries of the clerk and stenographer monthly."

The board did not make such provision.   It is conceded that the county treasurer has sufficient funds to pay.   Relators have continued in office, and have brought this proceeding to compel payment.

[1]   The board of supervisors had the power, under the law, to fix the salaries of the commissioners, and the latter had the power to appoint and remove clerks and stenographers and to fix their salaries.   The board of supervisors at first fixed such salaries by resolution at the sum of $500 per year for each commissioner, without agreement.   That resolution was rescinded on the day after its. adoption, and another was adopted by which such salaries were fixed at the sum of $800 per year each, upon the agreement between the parties that the same should include all expenses for nec-

essary labor and clerk hire. It is apparent that the parties contemplated that assistance might be required, and that the board of supervisors adopted the second resolution, so as to control or limit the amounts to be expended in this way.

The agreement was made and was valid. Larkin v. Village of Brockport, 87 Hun, 573, 34 N. Y. Supp. 551. Its effect was to limit the powers of the commissioners. Under the law they had the power to appoint and at pleasure to remove all clerks, stenographers, and employés, and to fix their salaries. While their right to appoint was not affected by the agreement, yet they could not, as between themselves and the board of supervisors, make the salaries of their appointees a county charge. So that, unless the agreement has been modified or annulled, the proceeding here cannot be maintained.

[2] It is claimed that the agreement was made with reference to the Election Law as it stood at the time, and that the passage thereafter of the Primary Law rendered performance thereof impossible, thereby annulling the agreement. The Primary Law did not repeal the Election Law as it stood at the time, but simply amended that law in relation to nominations and primaries, and thereby increased the duties of the commissioners. The increase in their duties would not have entitled them to increased compensation, if the agreement had not been made (People v. Supervisors, etc., 1 Hill, 362, 367; Wendell v. City of Brooklyn, 29 Barb. 204, 207; Palmer v. Mayor, 2 Sandf. 318; Matter of Palmer, 21 App. Div. 180, 47 N. Y. Supp. 433; Bernardi v. Fonda, 133 App. Div. 510, 117 N. Y. Supp. 727), and the Primary Law did not render performance of the agreement impossible.

[3] The commissioners recognized the agreement in their report to the board. In it they stated, in effect, that the additional work entailed by the passage of the Primary Law could not be performed by them without help, so that a clerk and stenographer had been "employed," and that they "would be pleased" if the board would provide for their compensation monthly. It is claimed that this was a termination of the agreement, or notice thereof, on the part of the commissioners. The language, however, indicates rather that it was intended as a request, and this is borne out by the fact that one of the commissioners addressed the board in relation to the matter on the following day. Even if it was intended as a termination of the agreement, that will not aid the relators here, because that result could not be effected and another agreement substituted without the consent of the board, and that consent was not given. The communication was received, ordered placed on file, and appears in the minutes. No other action was taken, and the board did not make the provision asked for, although it did provide for the salaries of the commissioners, in accordance with the agreement, and for contingent expenses.

[4] The request was not granted. In effect, it was denied. There was no express consent, and consent cannot be implied merely from the silence of the board, or from its failure to act. While

it may be that the words "from time to time," as used in section 193 of the Election Law, must be construed in the sense of "from term to term," when that section is read in connection with section 12, subd. 5, of the County Law (Consol. Laws 1909, c. 11), as amended by Laws 1911, c. 359, thus prohibiting an increase or decrease in the salary or compensation of the commissioners during their term of office, their appointments being for a definite term under the statute, yet their request, being for clerk hire, and not for increase of salary, could have been granted. The board of supervisors, however, relied upon the agreement, as it had the right to do.

The work of the relators has been materially increased, but the agreement, unwisely made, has not been annulled or modified, and relators have continued in office under it, so that their application must be denied, but, under the stipulation filed, without costs.