60  833<br>
e67  240

THE CITY OF KANSAS CITY v. NEILS HANSON *et al.*

No. 11407.

1. CITIES—*Paving Contract Construed.* A contract for paving a city street and keeping it in repair for five years examined, and the agreement to repair construed to be a guaranty of the quality of the workmanship and material used in paving, and not a general obligation to make street repairs irrespective of the causes making them necessary.

2. ——— *Paving Contract—Provision for Repairing not Illegal.* A contract to pave a city street and to make such repairs of it as may become necessary through indifferent work or the use of defective material is not illegal on the assumption, without proof, that the obligation to repair increased the amount of the contractor's bid, and thereby imposed upon the abutting property owners a burden properly resting upon the general public of the city.

Error from court of appeals, northern department; JOHN H. MAHAN, ABIJAH WELLS, and SAMUEL W. McELROY, judges. Opinion filed October 7, 1899. Reversed.

*F. D. Hutchings*, city attorney, and *T. A. Pollock*, city counselor, for plaintiff in error.

*True & True*, for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action of injunction to restrain the city of Kansas City from enforcing the

53—60 KAN.

collection of an assessment on abutting property for the purpose of paying for a street pavement, on the ground that the city council in making the contract for the improvement had included therein the estimated cost of repairs of the pavement for five years subsequent to the completion of the work. Judgment was rendered for the plaintiff, which judgment was affirmed by the court of appeals. Error is prosecuted to this court. The case is determinable upon the construction of the provisions of the contract in question. These read as follows:

" The contractor expressly agrees to give a good and substantial bond to maintain in good order the aforesaid pavement for five years after the date of its acceptance, and binds himself, his heirs and assigns, to make all repairs which may, from any imperfection in said work or material, or from any crumbling or disintegration of the material, become necessary within that time ; and contractor shall, whenever notified by the city engineer that repairs are necessary, at once make such repairs at his own expense, and if they are not made within fifteen days after the date of said notice, the city engineer shall cause such repairs to be made at the expense and cost of the said contractor.

" It is further agreed that whenever any repairs in the street are made necessary from the construction of sewers, laying of pipes or telegraph wires, or from any other disturbance of the pavement by parties acting under permit issued by the city engineer, the contractor shall, on notification from the city engineer, immediately cause all necessary repairs in conformity with the specifications for this class of work. The cost of such repairs, exclusive of back filling, which should be done by the parties holding the permit given in the same manner as now required by existing ordinances, shall be paid for at the full contract price for a square yard of new pavement, out of the deposit made by the one holding the permit, upon notice of completion from the city engineer."

In the construction of a contract *inter partes*, as like-wise other written instruments, the writing as a whole, as well as the particular part under consideration, must be looked at.   Every portion of it must be given due weight and the intent of the parties collected out of all its terms.   So doing in this case, there does not seem to be much difficulty in arriving at a correct con-clusion as to the meaning of the contract.   The first clause, standing by itself, would seem to. uphold the contention of the defendants in error.   It reads as fol-lows :  " The contractor expressly agrees to give a good and substantial bond to maintain in good order the aforesaid pavement for five years after the date of its acceptance."   Thus far quoted, this, in connection with other parts of the instrument, is an agreement not only to build but to keep in repair, and from it we might well conclude that, the contractor's obligation being not merely to build but to repair as well, the cost of repairs during the time stated was included in the amount of his bid.   If so, the contract would be illegal, because the cost of the repair of streets in cities, except as presently mentioned, is a general pub-lic burden and cannot be imposed upon the abutting property owners.   The above-quoted clause, however, is not the whole contract.   Following it, in immediate sequence and connection, the instrument reads :  "And binds himself, his heirs and assigns, to make all repairs which may, from any imperfection in said work or ma-terial, or from any crumbling or disintegration of the material, become necessary within that time."   Rightly construed, the last quotation is a specification of the kind of repairs which the contractor in the clause first quoted agreed to make.   Rightly construed, the two clauses together mean that the contractor binds him-self to make all repairs which might become necessary

through his imperfect work or imperfect material, and agrees to give a bond that he will do so. If it had been the design of the parties to make an agreement binding the contractor in general terms to make any and all repairs of the pavement for five years irrespective of the causes which made them necessary, the whole of the instrument following the clause first quoted might have been omitted. That standing by itself obligates to the making of repairs made necessary by any and every cause. The fact that in immediate connection with it a specific character of repairs was contracted for quite clearly indicates that it was the intention of the parties to limit the general language of the first clause by the specific and definite terms of the latter one. This, too, is what the law will do in its effort to ascertain the intent of parties to such instruments and to give effect to their engagements. (Bish. Contr., §§ 382, 406, 409.) We feel quite clear that the instrument should be construed as an agreement to make such repairs only as became necessary on account of indifferent workmanship or defective material used by the contractor. In other words, it is a guaranty by the contractor of the quality of material used and character of work performed by him.

The taking by the city council of such a guaranty cannot in law be held to increase the cost of the pavement or to impose upon the property owners payment for future repairs, and there was no evidence that the amount of the contractor's bid was in fact increased by the imposition of an obligation to make the repairs in question. The use of reasonably good material and the employment of reasonably skilful workmen are implied in the making of every such contract. To express in words what is thus implied, and to take se-

curity for the fulfilment of the obligation, cannot be regarded, as an onerous burden upon the taxpayer. Construing the contract as a guaranty of the quality of material and workmanship, the authorities are uniform in upholding its validity. (*Robertson v. City of Omaha*, 55 Neb. 718, 76 N. W. 442; *Asphalt Paving Co. v. Ullman*, 137 Mo. 543, 38 S. W. 458: *Allen v. City of Davenport*, 77 N. W. [Iowa] 532; *Wilson v. Trenton*, 60 N. J. L. 397, 40 Atl. 575; *Cole v. The People*, 161 Ill. 16, 43 N. E. 607.)

The defendants in error have filed a motion to dismiss but it is without merit and is overruled. The judgments of the court of appeals and the court of common pleas are reversed, with directions to the latter court to proceed in accordance with this opinion.