The People of the State of New York ex rel. Louise North, Appellant, *v.* James D. Featherstonhaugh et al., Constituting the Public Improvement Commission of the City of Cohoes et al., Respondents.

1. Certiorari — Public Improvements Commission. The proceedings of a public improvement commission in awarding a contract for curbing and paving are neither judicial nor quasi judicial, and hence not subject to review by certiorari before the assessment of a tax.

2. Appeal — Question of Law. *It seems,* that the determination upon evidence of a public improvement commission, authorized to construct curbing wherever it deems the same necessary and whenever in its judgment the public convenience requires it, that water often permeated between the layers of blue stone causing the stones to crack when a frost occurred, to replace an existing curb of blue stone with one of granite, gives rise to no question of law reviewable by the Court of Appeals on appeal from an order confirming the proceedings of the commission, on their review under a writ of certiorari.

3. Public Improvements — Specifications — Guaranty of Payment. *It seems,* that a provision in the specifications of the work to be done for paving a street, that the contractor will keep it in repair without expense to the city, for a period of eight years, does not place the cost of repairing upon adjacent property owners, but is a guaranty as to the quality and character of the pavement.

4. Contracts — Labor Law. *It seems,* that a contract for curbing and paving a street is not invalid because the specifications therefor require bidders to observe the provisions of the Labor Law, a part of which was declared unconstitutional before the bids were made, where the contract only provided for compliance with such provisions of the Labor Law as were in force, when the price for the work was not increased by reason of such provisions and the contract would stand unimpaired if the unconstitutional part of the Labor Law were eliminated from the specifications.

5. Same. *It seems,* that a provision incorporated in the specifications for a street improvement that workmen must in conformity with the Labor Law be paid in cash, and not in store orders, is not unreasonable or illegal when it is required by the statute.

6. Paving — Hearing. *It seems,* that the proceedings of a public improvement commission are not rendered invalid because abutting property owners were not given an opportunity to be again heard after the determination of the commissioners to pave with asphalt and curb with granite, although at the time of the hearing granted it was intended to pave with brick, where such hearing covered all matters pertaining to

the improvement and the commission had power by statute to change
their determination as to the character of the pavement.

   *People ex rel. North* v. *Featherstonhaugh*, 67 App. Div. 625, appeal
dismissed.

   (Argued June 13, 1902; decided October 7, 1902.)

   APPEAL from an order of the Appellate Division of the
Supreme Court in the third judicial department, entered
January 14, 1902, which confirmed the proceedings of the
Public Improvement Commission of the city of Cohoes in
awarding a contract to the New York and Bermudez Com-
pany to curb and pave Saratoga street in that city.

   The facts, so far as material, are stated in the opinion.

   *Lewis E. Carr* for appellant.    Certiorari is the appropriate
remedy and brings up for review upon this appeal the entire
proceedings had before, and taken by, the Public Improve-
ment Commission of the city of Cohoes in reference to the
paving and recurbing of Saratoga street, including the
alleged illegal provisions contained in the specifications for
such work.    (Code Civ. Pro. §§ 2122, 2140; *People ex rel.*
v. *City of Brooklyn*, 8 Hun, 56; *People ex rel.* v. *Lawrence*,
54 Barb. 589; *People ex rel.* v. *Board of Assessors*, 39 N. Y.
81; *People ex rel.* v. *Tubbs*, 59 Barb. 401; *People ex rel.* v.
*Common Council of Utica*, 65 Barb. 9; *Heywood* v. *City of
Buffalo*, 14 N. Y. 534; *People ex rel.* v. *Hildreth*, 126 N.
Y. 360.)    The determination of the commission to construct
granite curb along Saratoga street at the lot owners' expense
was without legal authority.    It was not new work, but a
repair of old work.    (L. 1898, ch. 227, § 6; L. 1900, ch. 213;
*People* v. *City of Brooklyn*, 21 Barb. 484.)    The require-
ments imposed by the commission in its specifications are
arbitrary, unreasonable, unwarranted and void.    (*Meyers* v.
*City of New York*, 58 App. Div. 534.)    The require-
ments in the specifications, that bidders must observe the
provisions of the Labor Law, were unwarranted and illegal.
(*People ex rel.* v. *Coler*, 166 N. Y. 1; *People ex rel.* v. *Coler*,
166 N. Y. 144; *Meyers* v. *City of New York*, 58 App. Div.

                8

534.) The requirements of the specifications that the contractor will be obliged to keep the pavement in repair without expense to the city for a period of eight years necessarily tended to impose upon property owners additional burdens and were unwarranted and illegal. (*People ex rel.* v. *Maher*, 56 Hun, 81; *Brown* v. *Jenks*, 98 Cal. 10; *E. P. Co.* v. *Leach*, 34 Pac. Rep. 116; *City of Portland* v. *Bituminous Co.*, 33 Oreg. 307; *McAllister* v. *Tacoma*, 9 Wash. 272; *Boyd* v. *City of Milwaukee*, 92 Wis. 456; *Fehler* v. *Gosnel*, 35 S. W. Rep. 1125.) The requirement in the specifications in reference to the payment of the workmen is unreasonable and void. (*Frorer* v. *People*, 141 Ill. 171; *State* v. *Loomis*, 115 Mo. 307; *People ex rel.* v. *Coler*, 166 N. Y. 19.) The provision in the specifications fixing an arbitrary price for repairs is unreasonable and void. (*Matter of Mahan*, 20 Hun, 301.) The action of the commission in awarding the contract herein to the New York and Bermudez Company was wholly void by reason of error in the preliminary proceedings. (L. 1898, ch. 227, § 13; L. 1900, ch. 213, § 4; *Merrit* v. *Vil. of Portchester*, 71 N. Y. 309; *Manning* v. *Ames*, 37 Wis. 61; *N. P. Co.* v. *Painter*, 35 Cal. 699; *Conde* v. *City of Schenectady*, 164 N. Y. 258; *Archer* v. *City of Mt. Vernon*, 63 App. Div. 286.) The objections of the relator to the several provisions in the specifications, including the provisions therein as to the observance by the contractor of the Labor Law and compelling said contractor to keep all work in repair for eight years after its acceptance without expense to the city, having been made prior to the final determination of the said commission to pave said street with sheet asphalt and to curb with granite curb, were timely made. (*Newberry* v. *Furnival*, 56 N. Y. 638; *Goldschmid* v. *Mayor*, etc., 14 App. Div. 135; *Driscoll* v. *City of Taunton*, 160 Mass. 486.)

*J. Newton Fiero* and *Walter H. Wertime* for the Public Improvement Commission of the City of Cohoes, respondent. The relator has mistaken her remedy. The writ of certiorari

will not lie, since the Public Improvement Act, under which the action complained of was taken, provides another exclusive remedy. (L. 1899, ch. 550, § 14; *People ex rel.* v. *Bd. of Suprs.*, 153 N. Y. 370; *People ex rel.* v. *Brady*, 166 N. Y. 44; *People ex rel.* v. *Board of Suprs.*, 131 N. Y. 468; *People ex rel.* v. *Trustees of Palmyra*, 3 Hun, 549; *People* v. *Bd. of Suprs.*, 25 Hun, 131; *Roosevelt* v. *Draper*, 23 N. Y. 318; *Doolittle* v. *Bd. of Suprs.*, 18 N. Y. 155; *Wakeman* v. *Wilbur*, 147 N. Y. 657; *Ayres* v. *Lawrence*, 59 N. Y. 192.) The relator waived her rights, if any existed, to object to the provisions of the specifications. (*Conde* v. *City of Schenectady*, 164 N. Y. 258; *Matter of Cooper*, 93 N. Y. 507; *Matter of Washington Street*, 14 N. Y. Supp. 470; *Matter of N. Y. El. Ry. Co.*, 17 N. Y. Supp. 870; *Sentenis* v. *Ladew*, 140 N. Y. 463; *Mayor, etc.*, v. *M. Ry. Co.*, 143 N. Y. 1.) The public improvement commission has power to construct the curb along Saratoga street at the expense of the abutting property owners, and its action was legal, proper and within the scope of its authority. (Elliott on Roads & Streets, 335, 336, 413; *Moran* v. *City of Troy*, 9 Hun, 450; *Matter of Furman Street*, 17 Wend. 649; *Denise* v. *Vil. of Fairport*, 11 Misc. Rep. 202; *Matter of Roberts*, 25 Hun, 371; 2 Dillon on Mun. Corp. [4th ed.] 959, § 780.) The specifications forming part of the contract requiring the contractor to keep the pavement in repair simply constitute a guaranty as to the character of the work, and not an agreement for subsequent repairs such as are required to be made by the city. (*City of Kansas* v. *Hanson*, 60 Kans. 833; *Robertson* v. *City of Omaha*, 76 N. W. Rep. 442; *Paving Co.* v. *Ullman*, 38 S. W. Rep. 458; *Allen* v. *City of Davenport*, 77 N. W. Rep. 532; *Wilson* v. *City of Trenton*, 40 Atl. Rep. 575; *Cole* v. *People*, 43 N. E. Rep. 607; *Schenectady* v. *Trustees of Union College*, 66 Hun, 179; *Brown* v. *Jenks*, 98 Cal. 10; *Osborn* v. *Lyons*, 73 N. W. Rep. 630; *Fehler* v. *Goswell*, 99 Ky. 380; *Verdin* v. *St. Louis*, 27 S. W. Rep. 447.) The question as to the constitutionality of the Labor Law is not

involved in the determination of this issue; the validity of the contract is not thereby affected. (*People ex rel.* v. *Coler,* 166 N. Y. 21.)

*Harry T. O'Brien* for New York and Bermudez Company, respondent. The relator by appearing before the public improvement commission and requesting that Saratoga street be paved with asphalt block, tacitly assented to the terms of the specifications under which the work would be done. She failed to raise any of the objections now urged by her at the proper time, excepting only the objection to the new curb, and by such failure she waived her right to question the terms of the specifications. (*Sentenis* v. *Ladew,* 140 N. Y. 463; *Lee* v. *Tillotson,* 24 Wend. 337; *Embury* v. *Connor,* 3 N. Y. 511; *Matter of Cooper,* 93 N. Y. 507; *Conde* v. *City of Schenectady,* 164 N. Y. 258.) The specifications forming part of the contract requiring the contractor to keep the pavement in repair simply constitute a guaranty as to the character of the work and not an agreement for subsequent repairs, such as are to be made by the city. (L. 1898, ch. 227, § 12; L. 1901, ch. 632.) The fact that the Labor Law is unconstitutional does not render the contract between the public improvement commission and the New York and Bermudez Company illegal. The provisions inserted in this contract are fairly within the discretion vested in a board of this character. (*Madden* v. *Van Wyck,* 35 Misc. Rep. 645; *Matter of Dugro,* 50 N. Y. 513; *Baird* v. *Mayor, etc.,* 96 N. Y. 567, 593; *Talcott* v. *City of Buffalo,* 125 N. Y. 280.) The relator, having another remedy, the writ of certiorari herein was improvidently granted and should be dismissed. (*People* v. *Suprs., etc.,* 43 Barb. 232; *People* v. *Trustees of Palmyra,* 3 Hun, 549; *People* v. *Bd. of Suprs.,* 25 Hun, 131; *People* v. *Lohnas,* 54 Hun, 604.)

HAIGHT, J. The court, upon the petition of the relator, issued a writ of certiorari to review the proceedings of the public improvement commission of the city of Cohoes in awarding a contract to the New York & Bermudez Co. to

curb and pave Saratoga street in that city from the south line of Newark street to the Mohawk river.

On the 31st day of March, 1901, the public improvement commission of the city of Cohoes caused a map and general plans, with the specifications of the work to be done for the paving and curbing of Saratoga street in that city, to be filed in the office of the clerk of the city, together with an estimate by the engineer of the cost of the improvement. They then passed resolutions unanimously directing the improvement to be made, and that notice be given for a hearing of all persons interested ; thereupon a notice was published in the official paper of the city, in accordance with the provisions of the statute, of the determination made by the commissioners to pave Saratoga street between the points named with vitrified brick, and to construct a granite curb on each side of the street with receiving basins, etc., and that a meeting of the commission would be held at their rooms in the city hall on the 4th day of April, 1901, to hear all persons interested in the improvement.

On the day named for the meeting the relator and others appeared and filed a protest against the construction of the curbs with granite, and asked that the blue stone curbing, already in, be retained ; and also filed a request that the pavement be made of asphalt blocks instead of vitrified bricks. Thereupon the hearing was, upon the request of the relator, adjourned until the 10th of April, 1901, at which time the testimony of several witnesses was taken, bearing upon the question of the necessity of the change from blue stone to granite curbing. At the conclusion of the testimony there was a further adjournment until the 24th of April, 1901, at which time bids were received, pursuant to a notice previously published, inviting bids for the proposed improvement with granite curbing and with the paving of either sheet asphalt, asphalt blocks, granite, Medina sandstone, repressed vitrified brick and pressed vitrified block. The relator then made further objections to the proceedings covering all the points which we shall hereinafter consider ; thereupon the bids were opened,

and subsequently the contract was awarded to the New York & Bermudez Co. to pave the street with sheet asphalt and to construct the curbs of granite for the sum of $34,753.72.

The public improvement commission of the city of Cohoes was created by chapter 227 of the Laws of 1898, and derives its powers from the provisions of that act, as amended by chapter 550 of the Laws of 1899, chapter 213 of the Laws of 1900 and chapter 632 of the Laws of 1901. The amendment of 1901, having become a law after the contract herein referred to was issued, need not now be considered. The commission being a statutory body, we shall assume that the measure of its powers is confined to the legislative acts which called it into being.

The first contention on behalf of the relator is, that the determination of the commission to construct a granite curb along Saratoga street at the lot owners' expense was without legal authority, and was not new work, but the repair of old work. We regard this contention as raising a question of fact, which was disposed of by the court below and is not reviewable in this court. The evidence tended to show that the old curbing was of blue stone; that some portions of it had been in use for many years and was badly out of repair; that none of it was set in a concrete base so as to prevent water from getting underneath; that the commissioners had determined to put the pavement and curbing upon a concrete base; that blue stone is composed of layers, some of which admit of the penetration of water, and when it freezes the stone is liable to crack; that in case of cracking it would necessitate the taking up of the curbing out of the concrete and the insertion of new curbing, which would largely increase the original cost; that granite curb when dressed and set in concrete does not allow water to reach its base, and that it is not subject to cracking or deterioration by reasons of the action of water or frost.

After the conclusion of the testimony upon the subject, the commissioners made a personal examination of the existing curbing and thereafter determined to construct the new curb

of granite instead of blue stone.  In their return they state that the reasons for the determination were "That in their opinion, for the pavement on a concrete base, it would be necessary to use a curb stronger than the blue stone, and a stone which is not a layer or sandstone ; that, in their opinion, the water falling upon the top of blue stone curb frequently gets in between the layers and a frost occurring under those conditions will separate the layers; and it is, in their opinion, impossible to distinguish between blue stone which will separate and one which will not."  We think it cannot be held that there was not any evidence to sustain the determination of the commissioners.  Under the statute the commission is given power to cause any street and highway in the city to be paved " and to construct any and all curbstones at the curb line which *it may deem necessary* for properly paving or repaving " (section 4).  Also the said commission shall have power to pave any street, highway, etc., and to construct all necessary curbstones for the purpose of such paving " when and whenever the public convenience in their judgment requires the same " (section 6).  It will thus be seen that the statute provides for the construction of curbing by the commissioners whenever they deem the same necessary, and whenever the public convenience in their judgment requires it ; and the commissioners, as we have seen, have exercised their judgment upon the evidence to which we have alluded and determined that it was for the best interest of the public that the curbing should be constructed of granite.  No question of law arises thereon which we think is reviewable in this proceeding.

In the next place, it is contended that the requirements of the specifications, that the contractor will keep the pavement in repair without expense to the city for a period of eight years, necessarily tended to impose upon the property owners burdens which were unwarranted and illegal.

Under the statute one-half of the expense of paving the street was required to be borne by the real estate adjacent and contiguous to that part of the street which the commissioners

determined to pave, and the other half was to be paid by the city at large. The specifications complained of are as follows:

## " YEARS GUARANTY OF MAINTENANCE.

"The contractor will be required to keep all his work in repair for the period of eight years from and after its acceptance by the city, without expense to the city. From the date of the acceptance of the work by the city the contractor guarantees the asphalt pavement, that he will keep it in repair for the period of eight years *as a part of the cost of the work*; that is to say, that from a date commencing with the acceptance of the work by the city to a date eight years subsequent thereto, he will maintain the asphalt pavement. The maintenance consists in repairs, renewals and furnishing materials necessary to maintain the surface of the street paved by the contractor, at all times, in a perfect state of uniformity; the uniformity of the street to be equal to that possessed by it when first accepted, and to be sufficient to present no marked hollows or projections and not to admit of water standing in depressions either on the crown of the street or in the gutters. The surface of the street shall not show any cracks, scaling off or other signs of disintegration by any action of the elements, and the pavement shall not show any wear greater than is usual with asphalt pavement of the best quality under equally heavy traffic. All imperfect work in the pavement consisting of open joints, cracks, scaling off or any other signs of failure, whenever found, are to be repaired in such manner as is prescribed heretofore for asphalt pavement." Then follow provisions for restoring the pavement when the street has been opened by permission of the city, or by water commissioners, or abutting owners; but for such restoration the contractor is to be compensated.

In the case of *People ex rel. Hall* v. *Maher* (56 Hun, 81) the General Term held that an ordinance of the city, providing for the pavement of the street, containing a provision requiring the contractor to agree to keep the pavement in repair for seven years after its acceptance by the city without

expense to the city, was in effect a charge of the cost of repairs upon the property of abutting owners, and was in violation of the provision of the charter which charges such expense upon the city at large. It will readily be seen that the question raised is one of considerable importance to the public, especially to the cities whose charters provide for the construction of pavement in streets at the expense of the abutting owners of real property, or the property benefited, and that the pavement when constructed shall be kept in repair at the expense of the city. Our attention has been called to no case in this court in which the question has been decided. In the case of *Gilmore* v. *City of Utica* (131 N. Y. 26) the case of *People ex rel. Hall* v. *Maher* (*supra*) was distinguished, but the court, apparently, carefully refrained from approving of the conclusion there reached. In other jurisdictions the decisions appear to be in conflict.

The cases of *Brown* v. *Jenks* (98 Cal. 10; *S. C.*, 32 Pac. Rep. 701); *Excelsior Paving Co.* v. *Leach* (34 Pac. Rep. 116); *City of Portland* v. *Bituminous Co.* (33 Oreg. 307; *S. C.*, 52 Pac. Rep. 28); *McAllister* v. *City of Tacoma* (9 Wash. 272; *S. C.*, 37 Pac. Rep. 447); *Boyd* v. *City of Milwaukee* (92 Wis. 456; *S. C.*, 66 N. West. Rep. 603) may be said to be in accord with the doctrine of the case of *People ex rel. Hall* v. *Maher* (*supra*).

The cases which may be said to entertain a different view are : *City of Kansas City* v. *Hanson* (60 Kan. 833); *Latham* v. *Village of Wilmette* (168 Ill. 153) ; *Cole* v. *People, etc.* (161 Ill. 16); *Allen* v. *City of Davenport* (107 Iowa, 90–101); *Osburn* v. *City of Lyons* (104 Iowa, 160); *Wilson* v. *City of Trenton* (60 N. J. Law, 394; affirmed, 61 N. J. Law, 599); *Barber Asphalt Paving Co.* v. *Ullman* (137 Mo. 543); *Seaboard National Bank* v. *Woesten* (147 Mo. 467; *S. C.*, 48 L. R. A. 279); *Barber Asphalt Paving Co.* v. *Hezel* (48 L. R. A. 285 [Mo. Supreme Court]); *Shank* v. *Smith* (61 N. E. Rep. 932 [Ind.]); *Barber Asphalt Paving Co.* v. *French* (158 Mo. 534 ; *S. C.*, 54 L. R. A. 492).

In the case of *City of Kansas City* v. *Hanson* (*supra*) the con-

**122** People ex rel. North *v.* Featherstonhaugh. [Oct.,

Opinion of the Court, per Haight, J.   [Vol. 172.

tractor agreed to maintain in good order the pavement for five years after its acceptance, and to make all repairs which may from any imperfection in the work or material, or from any crumbling or disintegration, become necessary within that time.  It was further agreed that whenever any repairs were made necessary from the construction of sewers, laying of pipes or telegraph wires, or from any disturbances of the pavement by parties acting under permit of the city engineer, the contractor should restore the street and receive pay therefor.   Under this contract Doster, Ch. J., in delivering the opinion of the court, says : " We feel quite clear that the instrument should be construed as an agreement to make such repairs only as become necessary on account of indifferent workmanship or defective material used by the contractor. In other words, it is a guaranty by the contractor of the quality of the material used, and the character of the work performed by him.   The taking by the city council of such a guaranty cannot in law be held to increase the cost of the pavement, or to impose upon the property owners payment for future repairs."

In *Latham* v. *Village of Wilmette (supra)* the specifications provided that the contractor shall, without extra compensation, keep in repair for a period of two years after its acceptance, by making good any settlement or derangement of lines or grades of curbs, gutters and crossings, and by replacing defective materials or work in curbs, gutters, crossings and pavements.   It was held that " This specification is no more than a guaranty that the work has been properly done and the contractor makes the agreement to repair if defective."

In the case of *Cole* v. *People (supra)* the provisions of the bond required the contractor, without further compensation, to " keep in continuous good repair all pavement laid under this contract for a period of five years."   Justice Magruder, in delivering the opinion of the court, says : " The provision complained of, which is quoted above, is merely a warranty or guaranty of the fitness of the material for the use intended. There is nothing in the provision to indicate that any of the

money raised by special taxation is to be applied to the purpose of maintaining the pavement and keeping it in repair."

In the case of *Barber Asphalt Paving Co.* v. *Ullman* (*supra*) the contract for paving included an agreement to maintain the pavement without further cost for five years. It was held that the contract did not thereby put upon the adjacent property owners any part of the cost of repairing; that the contract was a guaranty, and nothing more, for a sound pavement at the outset.

In the case of *Wilson* v. *City of Trenton* the contract guaranteed the endurance of the pavement for a period of five years, and the contractor agreed to maintain it in good condition, at his own expense, during that period. It was held that the repairs contemplated by the provisions of the contract were only those which arise from lack of durability of the pavement; and that such provision does not impose upon landowners abutting upon the street any burden other than that of having the pavement well constructed at the outset. We do not deem it necessary to specifically refer to the other cases above cited.

The paving companies in their endeavor to induce municipal governments to adopt their pavement are not slow in making representations as to its character and durability, and it would seem proper that some remedy should be preserved to the municipalities by which they can enforce their contracts and the representations of paving companies in this regard. It is true that the municipalities may employ inspectors to watch the pavement as it is laid, but this right has not proved to be an adequate protection to the cities. Contractors are anxious to make a large profit out of their contracts, and the temptation is strong to use cheap material and slight the work whenever it is possible for them to do so. In asphalt pavement its durability depends very largely upon the character of the work, the condition of the foundation for the pavement, and the mixture of the material used; and it is not difficult on the part of the companies to deceive the inspectors in regard thereto. A guaranty on the part of the

company, as to the durability of the pavement, affords a simple and complete remedy which fully protects the public, and when the time for which the guaranty continues is no longer than the ordinary durability of the pavement when laid with the best workmanship and material, it is not in contravention of the provisions of a municipal charter requiring repairs to be made at the expense of the city at large.

Returning to a consideration of the specifications we find them headed by the words " Years guaranty of maintenance." Then follows a provision to the effect that the contractor will be required to keep *all his work* in repair for a period of eight years; then, again, the contractor " guarantees the asphalt pavement" that he will keep it in repair " as a part of the cost of the work ; " then, again, the specifications proceed to define what is meant by keeping in repair. That he is to maintain uniformity of surface and allow no hollows or projections that will admit of water standing in the depressions, and the surface of the street shall not crack, scale off or disintegrate by the action of the elements, and shall show no wear greater than is usual to asphalt pavement of the best quality in equally heavy traffic ; all imperfect work, consisting of open joints, cracks, scaling off, or signs of failure, is to be repaired ; then, again, the displacement or derangement caused by cuts or trenches made by others, or the authority of the city, shall be paid for.

There does not appear to be any controversy that the asphalt pavement, properly constructed with proper material upon a concrete base, will remain in good condition for the period named in the specifications, or even for a longer time. And we think the repairs required by the contract have reference to making good the imperfect work done, or the defective material used therein. In other words, that it is in effect a guaranty as to the quality and character of the pavement. If we are correct as to this construction of the specifications, it follows that no additional burden was imposed upon the abutting property owners by reason of the eight-year requirement.

It is further contended that the requirement of the specifications, that bidders must observe the provisions of the Labor Law, invalidates the contract. The specifications invite the attention of contractors to the public act relating to the limitation of the daily service of laborers and mechanics upon the public works of the cities of the state, and then quote various provisions of the Labor Law, among which are the provisions to the effect that " Contractors will punctually pay workmen, who shall be employed by them upon the work under their contract, in cash currency and not in what as is denominated store pay or orders." The specifications then call attention to sections 3 and 13 of the statute, and state that the contracts will be void and of no effect unless these provisions are complied with. The provisions referred to fix eight hours as a legal day's work, and provide that the wages shall not be less than the prevailing rate for a legal day's work, and that preference of employment shall be given to citizens of the state. The specifications evidently were prepared before the decision of our court was rendered in the case of *People ex rel. Rodgers* v. *Coler* (166 N. Y. 1), in which it was held that the provision of the Labor Law requiring the payment of the prevailing rate of wages was unconstitutional and void. The bids, however, were not made up and handed in until after this decision. Before the bids were made, notice was given to the contractors that the commission would not enforce the provisions of the Labor Law, which had been declared unconstitutional, and that the commission would not enforce any of the provisions of that law which may thereafter be declared unconstitutional. The bids were then made, and the superintendent of the New York & Bermudez Company, the company to whom the contract was subsequently awarded, swears that in the bid of his company, submitted to the public improvement commission, no item was included by reason of the specification providing for an observance of the provisions of the Labor Law ; nor was the price set for the work increased in any wise by reason of such provisions. The contract entered into only provides that the contractor

will faithfully comply with all the provisions of the Labor Law
of the state which *may now be in force*.  The decision of
this court in the *Rodgers* case, having been previously rendered,
the provision of the Labor Law with reference to the payment
of the prevailing rate of wages was not in force at the time
the bids were made or the contract executed.  The fact that
the commissioners gave notice that they would not attempt to
enforce the Labor Law, which the court had held unconstitu-
tional, and the further fact that the bid made by the company
to whom was awarded the contract was not increased by rea-
sons of the provisions of that law, indicate very clearly that
the taxpayers of the city, or the abutting owners upon the
street sought to be improved, have suffered nothing by reason
of the provisions of the Labor Law to which attention was
called in the specifications.  Some of the provisions of the
Labor Law are undoubtedly constitutional and are still in force,
and consequently the provisions of the contract to the effect
that the contractor will observe those provisions, which may
now be in force, furnish no ground for just complaint.  A
contract, the consideration of which is based upon a statute
which is unconstitutional, is doubtless void.  But the contract
in this case does not depend upon the Labor Law for its con-
sideration.  The provisions of that statute incorporated into
the specifications are extraneous matters which have no material
effect upon the main provisions of the contract, and cannot
affect those provisions unless it may tend to increase the cost
of the work. . The contractors must be presumed to have
known the law, and consequently to have known that the
provision with reference to the rate of wages was unconsti-
tutional.  They are deemed, therefore, to have made their
bid with this understanding, even independent of the notice
which was given to them by the commissioners.  Their
bid was not in fact increased by reason of the Labor Law, as
appears from the testimony to which we have alluded.  We
think, therefore, that the provisions of the Labor Law which
have been held unconstitutional may be eliminated from the
specifications, and that the contract may stand unimpaired and

in full force and virtue. This was in effect held in the case of *People ex rel. Rodgers* v. *Coler* (*supra*). In that case the contractor sought a peremptory writ of mandamus to compel the comptroller to deliver to him a warrant on the chamberlain for the amount due him upon the contract, which was a contract in all essential features like the one now under consideration. The comptroller refused to deliver the warrant for the reason that the contractor had not complied with the provisions of the contract, which required him to pay the laborers employed by him the prevailing rate of wages. It was held that that provision of the Labor Law which had been incorporated into a contract was unconstitutional and void; but that the remaining part of the contract was in full force, and the mandamus was ordered to be issued.

The provisions of the specifications to the effect that laborers must be paid in cash and not in store orders is a requirement of the statutes which, as yet, has not been condemned in this state. The objection taken to this specification was that it is erroneous, unreasonable, illegal and unauthorized. It is not unreasonable or illegal if authorized by a statute. Our attention has been called to no provision of this, or any of the charters of the cities of this state, which permits the treasurer or other financial officer of a municipal government to keep a store and pay the employees of the city with orders on the store. It may be different, however, with contractors; but as we have seen, this specification is required by the statute, and no objection was taken, upon the ground that the statute was unconstitutional, and it is not the practice of this court to determine the constitutionality of statutes unless the question is distinctly raised by the record.

Finally, it is contended that the determination of the commissioners to pave with sheet asphalt and to curb with granite was made by the commission without an opportunity of the abutting property owners to be heard on such determination. It is true that in the notice given for a hearing it was stated that the commission had determined to pave with vitrified brick, and a hearing was had upon that notice. The hearing,

however, covered all matters pertaining to the improvement, the kind of pavement to be used, as well as the kind of curbing. The statute makes provision for the hearing, and then concludes: "Said commission shall have the power to change, alter, add to or modify their first and original determination in reference to such improvement, and shall also have the power and right to change their opinion in reference to what portion of the whole expense should be paid by local assessment." After the hearing it appears that the commission did change their determination as to the character of the pavement it would adopt, and finally concluded to use sheet asphalt instead of brick.

Other questions have been discussed in the briefs of counsel which we have considered, but they present no error that requires a reversal of the proceedings, and we do not deem it necessary to specifically refer to them.

In view of the fact that a large number of persons will become interested as taxpayers when an assessment is made to pay for the improvement contracted for, we have thought it wise to consider this case upon the merits. We are, however, of the opinion that the proceedings sought to be reviewed are neither judicial nor quasi-judicial, and, therefore, under the well-settled rules are not subject to review by certiorari. (*People ex rel. Trustees, etc., v. Bd. Supervisors of Queens Co.,* 131 N. Y. 468; *People ex rel. O'Connor v. Bd. Supervisors of Queens Co.,* 153 N. Y. 370, 374.)

The appeal should, therefore, be dismissed, with costs.

Parker, Ch. J., Gray, O'Brien, Vann, Cullen and Werner, JJ., concur.

Appeal dismissed.