(112 App. Div. 308)

## UNTERMYER v. CITY OF YONKERS.

(Supreme Court, Appellate Division, Second Department. April 27, 1906.)

1. MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—SPECIAL ASSESSMENTS—AUTHORITY OF MUNICIPALITY.

   A municipal corporation, acting as the agent of the owners of property benefited by a public improvement, is restricted in its agency to the terms of the statute under which the work was undertaken, and there is an implied limitation that the property benefited shall not be called on to pay more than the legitimate cost of the improvement.

2. SAME—RIGHT OF PROPERTY OWNER TO COMPLAIN.

   Where a property owner stood by and saw a public improvement being made without raising any objection, he must, on appealing to equity to set aside the assessment made on his property for the payment of the improvement, establish affirmatively the fact that he has been wronged by the assessment, as a condition of relief.

3. SAME—EFFECT OF INVALIDITY OF CONTRACT.

   Contracts for the construction of sewers at the cost of the property benefited bound the contractors to abide by Laws 1899, p. 1172, c. 567, providing for the employment of laborers for 8 hours per day, and at the payment of the prevailing rate of wages in the locality. The contractors did not take the provision into consideration in making the estimates on which their bids were made. The contracts were let to the lowest bidders. None of the bidding contractors would have made lower bids if the provision had not been in the contracts. The contracts were not performed subject to the limitation. Experts claimed that contracts performed with such restriction increased the labor cost from 15 to 25 per

cent. *Held*, that the assessments for the benefits were not increased by reason of the provision required by the statute, which is invalid, and an owner was not entitled to have the assessments set aside on the ground that the contracts contained the restriction.

**4. SAME—BENEFITS TO PROPERTY.**

A sewer constructed in R. and P. avenues was done under one proceeding. The sewer was in the form of a "T," the stem thereof being in P. avenue while the top thereof extended east and west along R. avenue. There was no evidence of any fraud on the part of the municipality in fixing the assessment district. The assessors, in apportioning the cost of the improvement according to the benefits, procured the contractor to furnish an itemized estimate of the cost of constructing the portion of the sewer which passed on R. avenue. The assessments of benefits were made on the portion which might be presumed to be of benefit to property abutting on R. avenue. *Held*, that the assessment on property abutting on R. avenue would not be set aside on the ground that the land was not benefited by the construction of the entire sewer.

**5. SAME.**

The city procured from a railroad company conveyances of rights of way to construct a sewer under the tracks of the company. The city then constructed the sewer through the premises described in the conveyance. *Held*, that there was no defect in the proceeding vitiating the assessment for benefits on the ground that the city had a mere license to construct the sewer under the railroad tracks; it being presumed that a beneficial grant is accepted.

**6. SAME.**

Mere formal defects, in no wise working an injury to one who has stood by and has seen a public improvement constructed, are not proper grounds for setting aside an assessment for the cost thereof.

Miller, J., dissenting.

Appeal from Special Term, Westchester County.

Proceedings by Samuel Untermyer against the city of Yonkers to set aside assessments for the payment of public improvement. From a judgment setting aside the assessments, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, MILLER, and GAYNOR, JJ.

Francis A. Winslow (William J. Wallin, on the brief), for appellant. Ralph E. Prime and Louis Marshall, for respondent.

WOODWARD, J. The defendant, acting under the provisions of its charter, has constructed certain sewers in the streets, highways, and public places of the city of Yonkers, and has levied assessments upon the property supposed to be benefited by such improvements. The plaintiff has property adjacent to some of these sewers, which were evidently constructed to conform to a general system for the locality, and he brings this action to set aside the assessments made upon his property for the payment of his portion of the cost of such sewers, and the learned court at Special Term has found in his favor. The defendant appeals from the judgment entered upon the decision of the court.

The principal objection urged to the assessments as a whole is the fact that the various contracts under which the three separate sewers were constructed contain provisions by which the contractors agree to abide by the provisions of chapter 567, p. 1172, of the Laws of 1899, which provides for the employment of laborers for only eight hours

per day and the payment of the prevailing rate of wages·in the locality. It .is conceded that these provisions of the statute are unconstitutional and of no force and effect, and it is the contention of the plaintiff, supported by the judgment, that the presence of this provision in the various contracts has had the effect of increasing the cost of these sewers, and thus to take the property of the plaintiff without due process of law, by compelling him to pay more than the legitimate cost of the public improvement. It is not to be doubted that a municipal corporation, acting as the agent of the owners of property benefited by a public· improvement, is restricted in its agency to the terms of the statute under which the work is undertaken, and that there is an implied limitation that the abutting or benefited property shall not be called upon to pay more than the legitimate cost of such public improvement within reasonable bounds; but where the plaintiff has stood by and watched the improvement being made without raising any objections, he is bound, in appealing to a court of equity, to establish affirmatively the fact that he has been wronged by the assessment as a condition of relief. The evidence in this case, it seems to us, fails to meet this equitable requirement. It is true that there was some testimony by witnesses called as experts to the effect that a contract performed under the letter of these various agreements would increase the labor cost 15 to 25 per cent., but there is no evidence that the contracts were performed under such limitations, and the presumption is that the contractors knew the law, and that they disregarded these provisions in the making of their bids. In speaking of these provisions in the case of People ex rel. North v. Featherstonhaugh, 172 N. Y. 112, 126, 64 N. E. 802, 806, 60 L. R. A. 768, the Court of Appeals say:

"The provisions of that statute incorporated into the specifications are extraneous matters, which have no material effect upon the main provisions of the contract, and cannot affect those provisions, unless it may tend to increase the cost of the work. The contractors must be presumed to.have known the law, and consequently to have known that the provision with reference to the rate of wages was unconstitutional. They are deemed, therefore, to have made their bid with this understanding, even independent of the notice which was given to them by the commissioners."

In the case now under consideration the various contractors, or persons representing such contractors, testify that the provisions of the statute in reference to labor were not taken into consideration in making the estimates on which their several bids were made, and this seems entirely probable when we consider the comparatively small contracts which were being considered. The largest contract was for $31,750, which included all work and materials, and the other two were for $19,-800 and $17,666, respectively; and when it is recollected that a very large portion of the cost of such improvements is in the materials, in the investment in plant for doing the work, etc., it may very well be that a contractor would not figure very minutely upon the question of the exact hours of labor and the rate of wages. To justify him in doing the work his contract must necessarily take into consideration a large number of incidental questions, such as accidents, delays due to weather conditions, etc., and if we assume, what the law presumes, that these contractors knew that the provisions of the labor law here under con-

sideration were unconstitutional, there is no foundation for the conclusion that the cost of this improvement was increased by reason of this provision in the contracts. It might be that the cost of doing the work would be increased to the contractor if he in fact complied with the provisions of the statute, but that is not the question involved here; the question is whether the cost of the improvement to the plaintiff and others similarly situated was increased by reason of the provision in the various contracts, and the evidence does not show that it was. There were several bids on each proposition. The contracts were let to the lowest bidders, and there is not a suggestion on the part of any one, so far as the evidence discloses, that any of the competing contractors would have made lower bids if these provisions had not been in the conditions of the contracts, or that the successful bidders would have been willing to have put in lower bids without these limitations. On the contrary, the successful bidders say that they did not take these provisions of the statute into consideration in making their estimates, there is no evidence that the contracts were performed subject to such limitations, and it seems to us that there is an entire failure to establish the fact that the cost of the improvement to the benefited property owners has been enhanced a single dollar by reason of these unconstitutional provisions in the several contracts. See Knowles v. City of New York, 176 N. Y. 430, 440, 68 N. E. 860.

It is also urged by the plaintiff, and supported by the judgment, that the assessment resulting from the North Broadway sewer proceeding and from the Robert avenue and Palisade avenue proceeding are void because the plaintiff's land is not benefited thereby; several sewers having been in each instance united in one proceeding, and the property benefited by one of such sewers being in no sense benefited by the other. It appears from the evidence in this case that the sewers constructed in Robert avenue and Palisade avenue were done under one proceeding. The sewer is in the form of a "T," the stem of the "T" being in Palisade avenue, while the top of the "T" extends east and west along Robert avenue. The plaintiff's property lies north of Robert avenue, on the slope of the southerly hill, forming the valley where the north and south branches of the sewer connect with the Palisade avenue stem. The work was all embraced in a single contract, there is no evidence of any fraud or bad faith on the part of the common council in fixing the assessment district, and the assessors in apportioning the cost of the improvement according to the benefits to the property within the assessment district procured the contractor to furnish an itemized estimate of the cost of constructing the portion of the sewer which passed near the plaintiff's premises, and the assessment of benefits appears to have been made, not upon the cost of the entire "T" sewer, but upon that portion which may be presumed to be of benefit to the plaintiff's premises. This was likewise true of another of the sewers in a general way, and we are of opinion that it does not show grounds for equitable relief. So far as the evidence discloses, there was an effort to follow the statute very closely on the part of the public officials, and the assessment does not appear to have worked any hardship upon this plaintiff for which he is not fully compensated by the benefits which may be expected to flow from the inauguration of a public improvement es-

sential to the health of the community in general, and to those occupying the premises which this sewer is designed to drain. These objections, as well as various others urged by the plaintiff, are, to quote the language of the court in Gilmore v. City of Utica, 131 N. Y. 26, 34, 29 N. E. 841, 843, "of the purest technicality, and under these circumstances courts should not be astute to find some means of setting aside what, so far as the evidence shows, is a meritorious assessment, levied for the payment of the cost of a public improvement."

The suggestion that the defendant had failed to accept certain conveyances of rights of way, or that there was a defect in the proceedings vitiating the assessment because of the fact that at the time of the commencement of this action the defendant had a mere license to construct the sewer under the tracks of the New York Central & Hudson River Railroad, is hardly worthy of serious consideration. It is always presumed that a beneficial grant is accepted, and the fact that the defendant procured these grants, and then constructed the sewer through the premises described in such grants, is conclusive that the right vested in the defendant. In the matter of crossing the railroad, it appears that the matter has since been entirely cleared up by a grant from the railroad company, and there is no ground for equitable relief in this technical defect.

We have examined all of the matters urged by the plaintiff, but we are unable to agree with the conclusion reached by the learned court at Special Term. The proceedings of a jurisdictional character appear to have been complied with in a manner which is not open to criticism, and the details appear to have been worked out with more than usual regard for the rights of those who are to pay for the improvement. Mere formal defects, in no wise working an injury to one who has stood by and seen a public improvement constructed, are not proper grounds for setting aside an assessment, which must result in throwing the burden either upon the contractor or upon the community at large; and we are of opinion that the evidence in this case does not warrant the disposition made at Special Term.

The judgment appealed from should be reversed, with costs to abide the final award of costs.

All concur, except MILLER, J., who dissents on the ground that the finding that the illegal provisions of the estimates and contracts increased the cost of the work is abundantly supported by the evidence. The successful bidder admitted that it entered into his estimates.