SAMUEL P. CLARK, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

The legislature has power to pass a general law regulating the compensation of laborers employed by the state, or by officers under its authority, which disturbs no vested right or contract.

Accordingly *held,* that the act of 1889 (Chap. 380, Laws of 1889), which took effect in June of that year, regulating the wages of day laborers employed by the state or any officer thereof on public works, was constitutional.

When the compensation of a laborer is so fixed by statute it cannot be reduced by a state officer under whom a laborer is employed, and the fact that he takes for a time a reduced compensation does not estop him from subsequently claiming the residue.

Upon hearing of a claim presented to the Board of Claims the following facts appeared : Plaintiff was employed by the superintendent of public works as lock tender on the canal during the season of navigation of 1889. No express agreement was made for compensation, but claimant was paid twenty dollars monthly; at no time during his employment did he make any claim that he was entitled to more, but he executed no release. *Held,* that the claimant was a laborer within the meaning of said statute of 1890, and that while if there had been a contract, either express or implied, at the beginning of the claimant's employment, fixing his compensation, the act would have had no application, in the absence of such a stipulation he was entitled to recover the difference between the sum fixed by the statute, and that paid to him from and after the time it went into effect.

(Submitted March 8, 1894; decided April 10, 1894.)

APPEAL from award of the Board of Claims, made November 15, 1892, in favor of claimant.

The facts, so far as material, are stated in the opinion.

*T. E. Hancock, Attorney-General,* for appellant. The statute under which the claimant seeks to maintain his claim contravenes the State Constitution. (Laws of 1889, chap. 380; Const. N. Y. art. 5, § 3; *People ex rel.* v. *Angle,* 47 Hun, 183; *People ex rel.* v. *Albertson,* 55 N. Y. 55; Laws of 1889, chap. 309; Laws of 1888, chap. 150; Laws of 1890, chap. 266.)

*John O. McMahon* for respondent. It is submitted that even though the legislature of 1889 made no appropriations to meet the requirements of chapter 380 of the laws of that year (which fact is unimportant in this case) nevertheless the Constitution of the state, "article 7, section 10," provides that the state may, to meet casual deficits or failures in revenue, or for expenses not provided for, contract debts not to exceed $1,000,000. (Laws of 1888, chap. 150; Laws of 1889, chap. 309.) The act does not conflict with section 9, article X of the Constitution, since it does not presume to interfere with the salaries of any state officers named in the Constitution, or of any officers whose salaries are fixed by the Constitution. (*Mongan* v. *City of Brooklyn*, 98 N. Y. 585.) Claimant being employed from four A. M. to eight P. M. cannot be considered a day laborer under chapter 380, Laws of 1889, but clearly comes under the class of " those employed otherwise," whose compensation the statute expressly fixes by the hour, at not less than twenty-five cents. (*Kehn* v. *State of N. Y.*, 93 N. Y. 291; *Satterlee* v. *Board of Police*, 75 id. 38; *People ex rel. Ryan* v. *French*, 91 id. 265; *Riley* v. *Mayor*, 96 id. 339; *Post* v. *U. S.*, 148 U. S. 124; 108 N. Y. 475.) The award should draw interest. (11 Wend. 478; 36 N. Y. 255; 49 id. 304; 45 id. 306; 62 id. 316; 50 Barb. 62.)

O'BRIEN, J. The Board of Claims have made an award in this case in favor of the claimant based upon the following facts : The claimant was employed by the superintendent of public works during the season of navigation from May 1 to November 1 in the year 1889, as a locktender on the canal. No express agreement was made as to compensation, but payment was made monthly during the six months of his employment at the rate of $20 per month. This seems to have been the compensation theretofore paid to persons so employed. The claimant, during part of the time at least, signed the monthly pay rolls, and at no time during his employment did he make any claim that he was entitled to more. No question as to the liability of the state to pay the claimant any more

could possibly arise upon these facts, except for the enactment by the legislature of chapter 380 of the Laws of 1889, which took effect on the 6th of June of that year. Although this statute was repealed by the succeeding legislature (Laws of 1890, ch. 218), it was in force during nearly five months of the period of the employment. As the award rests entirely upon this statute, it may be well to give it here in the language used by the legislature :

"An act to regulate the rate of wages on all public works in this state, and to define what laborers shall be employed thereon.

"Section 1. From and after the passage of this act wages of day laborers employed by the state, or any officer thereof, shall not be less than two dollars per day, *and for all such employed otherwise than day laborers* at a rate of not less than twenty-five cents per hour.

"Sec. 2. In all cases where laborers are employed on any public work in this state, preference shall be given to citizens of the state of New York.

"Sec. 3. This act shall take effect immediately."

I am unable to see why the claimant was not a laborer upon the public works of the state employed as such by an officer of the state within the meaning of this statute. If the claimant was entitled to its benefits he is not concluded by the fact that he received pay from time to time at former rates and signed the pay rolls. He has not released the state from any of its legal obligations to him. The superintendent, who is charged with the duty and vested with the power under the Constitution of employing all persons necessary in the care and management of the canals, might, notwithstanding this statute, have made contracts for labor and services before it was passed upon such terms and at such rates of compensation as in his judgment was most advantageous to the state, but the finding in this case implies that no such contract was made. The trial court might have found from all the facts and circumstances that the claimant agreed to perform the services for $20 per month and that compensation at that rate was

what the parties intended, but the evidence was of such a character as to render another view possible. At all events under the circumstances of this case we feel concluded by the finding. The statute did not take effect until after the claimant was employed, and if he entered the service under a contract, express or implied, it could not be affected by subsequent legislation. The contract need not be expressed in formal words or in writing, but could be implied from the situation and conduct of the parties and from the circumstances.

There is no exception to the findings as made and there was no request to find a contract from the facts disclosed. We must, therefore, treat the case as one of employment merely without any contract as to compensation, and this brings us to the question discussed by the learned attorney-general in regard to the power of the legislature to enact the statute in question. By section three of article five of the Constitution, certain powers are conferred and duties imposed upon the superintendent of public works with respect to the care and management of the canals that may not be affected by legislation. (*People ex rel. Killeen* v. *Angle,* 109 N. Y. 564.) But in the exercise of these powers and in the performance of these duties he is not wholly independent of the legislature. The law-making power has the sole authority over the subject of taxation and the appropriation of money. The funds necessary to enable the superintendent to perform the duty of maintaining and managing the canals must be appropriated and are subject to legislative discretion. It may appropriate more or less, or not at all, according to its own views of necessity and its own judgment as to what course will best subserve the public interests. It may direct how and in what particular manner the money devoted to canal maintenance may be expended, and, incidentally, it may fix the rate of compensation to be paid for services performed upon the canal when no contract right is thereby impaired. It is said that to concede this power to the legislature would enable it to paralyze the powers conferred by the Constitution upon the superintendent, since it might, by means of extravagant com-

pensation to employees, waste the moneys devoted to the care and management of the canals. That may be true in the sense that all powers, legislative or otherwise, are liable to be abused. So it might refuse to appropriate at all, and the superintendent would be without any means whatever to enable him to perform his duties. But these extreme cases which show that power may possibly be abused, are no proof that it does not exist. The court cannot construe the Constitution so as to preclude all possibility of the abuse of power. There has always been ample room within the pale of the Constitution for the misuse or abuse of powers conferred upon public bodies or officers, which is subject in a large measure to the exercise of discretion. It must be assumed that the legislature and. all other public bodies intrusted with the functions of government, general or local, will use the power conferred by the Constitution or the law fairly and in the public interests. There is no express or implied restriction to be found in the Constitution upon the power of the legislature to fix and declare the rate of compensation to be paid for labor or services performed upon the public works of the state. That legislation is doubtless open to criticism from the standpoint of sound policy and expediency, but the courts have nothing to do with these questions so long as it is not in conflict with the Constitution, and we think that a general law regulating the compensation of laborers employed by the state, or by officers under its authority, which disturbs no vested right or contract, was within the power of the legislature to enact, whatever may be said as to its wisdom or policy. That the law was neither wise nor practicable may be inferred from the fact that it was promptly repealed at the very next session, and we have to deal only with such rights as the claimant upon the record acquired under it. Where the compensation of an employee of the state is fixed by statute, it cannot be reduced by the state officer under whom he is employed, and the fact that the employee takes for a time the reduced compensation, does not estop him from subsequently

claiming the residue. (*Kehn* v. *State*, 93 N. Y. 291; *Riley* v. *Mayor, etc.*, 96 id. 331.)

It is true that when the claimant was employed there was no statute regulating his compensation, and it was competent for the officers in charge of the canals to stipulate with him upon any measure of compensation that might be agreed upon by the parties, and the statute would have no application to this case during the period when the contract was in force. So that in this case a finding that the claimant entered into the service of the state in pursuance of a contract, express or implied, under which he was to render the service for the compensation paid, would defeat the claim, but, in the absence of such finding, we must dispose of the case upon the assumption that there was no such stipulation. This court will not look into the evidence for the purpose of making a finding to reverse a judgment, though it may do so for the purpose of sustaining it.

For these reasons, the award of the Board of Claims should be affirmed, with costs.

All concur.

Award affirmed.