### McAVOY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

1. LABORERS ON PUBLIC WORKS.

Laws 1897, c. 415, provides that all mechanics, workingmen, and laborers employed by the state or any municipal corporation therein, or in the employ of persons contracting with the state or such corporation for the performance of public work, shall receive for their services the prevailing rates of wages paid in the same calling in that locality. *Held,* that this act applies as well to protect laborers employed on public works directly by municipalities, as though employed by contractors with the city to do like work.

2. PUBLIC WORK—REPEAL—EIGHT-HOUR LAW.

Laws 1899, c. 567, fixing eight hours as a legal day's work except in certain cases, and prescribing the wages to be paid to all classes of labor-

ers on public works, do not operate to repeal Laws 1897, c. 415, defining what is included within the term "public work."

Appeal from special term, New York county.

Action by Thomas McAvoy against the city of New York to recover a balance of wages. From an interlocutory judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Austen G. Fox, for appellant.
Theodore Connoly, for respondent.

RUMSEY, J. The action was brought to recover a sum of money which the plaintiff claims to be entitled to under what is known as the "Prevailing Rate of Wages Act." He alleges that he was employed by the city of New York as a rammer on the streets of that city, for which work he received $3 a day, while the prevailing rate during that time for other laborers in New York was $3.50 a day, and he asks to recover 50 cents a day for the time he was so employed. The demurrer was upon the ground that the complaint does not state facts sufficient to constitute a cause of action. The question is simply whether the present statute, which provides that wages upon public work shall not be less than the prevailing rate paid in the same calling in the locality where the work was performed, applies to protect those who are employed by a municipal corporation on public work, as well as those who are employed by contractors to do like work for a city. The question is purely one of construction of the statute; arising from the changes which have taken place from time to time in the "Labor Law," so called.

The first labor law was chapter 385 of the Laws of 1870. It fixed a legal day's work at eight hours for all classes of mechanics, workmen, and laborers, excepting those engaged in farm and domestic labor. Section 2 of that act provided that it should apply to "all mechanics, workingmen and laborers now or hereafter employed by the state, or any municipal corporation therein, through its agents or officers, or in the employ of persons contracting with the state or such corporation for performance of public works"; and the law provided penalties for its violation. But it contained no provision as to the rate of wages to be paid to these men. The law remained in that condition until 1894, when section 2 was amended by inserting the provision that all persons of the classes named should receive not less than the prevailing rate of wages in the respective trades or callings which such persons in those trades received in the locality. The law as amended made no change with regard to its applicability to the state and municipal corporations, and contractors with them upon public works. That statute continued in force until the passage of the labor law in 1897; being chapter 32 of the General Laws and chapter 415 of the Laws of 1897. The phraseology of the statute was somewhat amended by that law, but the rule therein prescribed as to the number of hours that should constitute a day's work, and requiring the payment of the prevailing rates of wages, was not changed.

The form of the words by which the act was made to apply to the
state and to municipal corporations was changed to read as follows:
"This section applies to work for the state or a municipal corpora-
tion or for contractors therewith." That sentence of the law of
1897 immediately followed the provision fixing eight hours as a legal
day's work. The next sentence, which required the payment of the
prevailing rate of wages, began with these words, "Wages for such
public work." It is clear that down to that time the legislature had
carefully provided that every regulation fixing the hours of a legal
day and the payment for a day's work should apply, not only to con-
tractors with the state or a municipal corporation, but to all laborers
in the classes named, employed either by the state or a municipal
corporation, and that the words "such public work" included the work
done by the state or a municipal corporation, as well as that done by
a contractor. Indeed, it was only in that way that the statute could
be made of substantial value to those for whose benefit it was passed.
It was very clear that the legislature had no power to prescribe the
rate of wages that should be paid by a private person to any mechanic,
workingman, or laborer he might see fit to employ. It was not clear
that the legislature had power to prescribe the rate of wages to be
paid by a contractor on state or municipal corporation work. There
was no doubt, however, that it had absolute power to fix the rate
of wages that should be paid by the state or by a municipal corpora-
tion to those whom they employed. The intent of the legislature
being to insure the payment to certain classes of laborers of the ordi-
nary rate of wages that men employed in that kind of work received,
it is evident that, to carry out fully that intent, it was necessary that
the wages to be paid by the state or by a municipal corporation, over
which the legislature had undoubted control, should be fixed. It is
fair, therefore, to assume that the policy of the legislature as indi-
cated by the statutes was, at all events, to require the prevailing
rate of wages to be paid by the state and by a municipal corpora-
tion, as well as by contractors upon public work. But the law of 1897,
as well as the law of 1894, was manifestly defective, because, although
in terms applying to contractors doing public work, yet it provided
no way by which a contractor could be compelled to obey the law,
or to prevent his employing laborers at less than the prevailing rates
if he saw fit to do so; and it was evidently to supply this omission
that the amendment of 1899 was enacted.

The work of the plaintiff was done after that amendment took ef-
fect; and the question is whether, by a fair construction of the labor
law in the form which it then had (chapter 567, Laws 1899), so much
of that statute as required the payment by the state or a municipal
corporation of the prevailing rate of wages has been repealed. In
considering that question, we must bear in mind the provision of
the statutory construction law to the effect that the provisions of a
law repealing a prior law, which is a substantial re-enactment of the
prior law, should be construed as a continuation of the prior law,
and not as a new enactment. Statutory Construction Law, § 32. The
amendment of 1899 is a mere re-enactment in a different form of the
former law, so that the rule of construction will apply, that a mere

change in the phraseology or in the arrangement or division of the sections of an antecedent law will not be construed as a change in the law unless the alteration is such as evidently purports a legislative intent to work such a change. Davis v. Davis, 75 N. Y. 221; In re Prime, 136 N. Y. 347, 32 N. E. 1091, 18 L. R. A. 713. When the provisions of a former law are substantially contained in a latter one, although in a different connection or in different phraseology, it will not be supposed that there was any change in the meaning intended, unless the presumption of an intent to change necessarily arises. In view of these well-settled rules of construction, let us examine the act in question. It is an act to amend the labor law, and it amends section 3 of that act, which is the section under consideration, in the following particulars: It first enacts that eight hours shall constitute a legal day's work, except in certain cases. Then, in addition, it provides, "This section does not prevent an agreement for overwork at an increased compensation except upon work by or for the state or a municipal corporation or by contractors or sub-contractors therewith." The necessary inference from that provision is that not only upon such public work as is spoken of in that section is eight hours to be a legal day's work, but that upon that work no more than eight hours shall be spent; and the statute includes the work done by or for the state or a municipal corporation, or by or for a contractor under contract with them. This is the work called "public work" in the Laws of 1894 and 1897, which is amended in 1899. The next sentence prescribes a stipulation for the purpose of enforcing the law, which is to be put into every contract to which the state or a municipal corporation is a party, which prohibits the employment of any labor for more than eight hours a day, and which is put there, clearly, for the purpose of providing a way by which the contractors may be compelled to observe the provisions of the eight-hour law, which just precedes, and which is to the effect that no contractor shall require any overwork in the performance of his contract. But it does not prescribe the nature of the work, or what shall constitute public work. It only refers to persons who make contracts with the state or a municipal corporation which involve the employment of laborers. The next sentence, the construction of which involves the question here, prescribes that the wages to be paid for a legal day's work, as defined above, to all classes of laborers, workmen, and mechanics upon all such public work, etc., shall not be less than the prevailing rate, etc. The question simply is, what is the "public work" referred to in that sentence? Is it confined to the work which is to be done for the state or for a municipal corporation by a contractor, or is it the work which the state or a municipal corporation itself does, as well as that done by a contractor? To ascertain that, we must go back to see where in the statute the work which is referred to is first spoken of, because, if we find that it is there mentioned in such a way as to involve a definition of it, it is then fairly to be assumed that, as so defined, it will mean the work here referred to. Going back to the second sentence of the section, we find that it speaks of work by or for the state and by or for a municipal corporation, and contractors therewith. This is all public

work, and it is just what is included in the term "public work" as used in the former statute. No matter whether it is done by the state or a municipal corporation, or for the state or a municipal corporation, or by contractors with the same purpose, it all is included. The legal day's work, "as hereinbefore defined," includes all the work done by the state or a municipal corporation, and not the work done by contractors for them. The "public work" spoken of in that sentence is the work that is to be done by or for the state or a municipal corporation, or by contractors therewith. There is nothing in the context of the particular sentence which limits the public work referred to to that done by a contractor alone, and there is nothing in the sentence prescribing the form of contract which would enable us to say that it is the only public work to which the statute intends the prevailing rate of wages to apply. The statute has in view the nature of the work, and not the person who hires it to be done. The policy of the law is that laborers, mechanics, and workmen employed upon public work shall receive the prevailing rate of wages paid in the locality where they are employed. That policy is just as important with respect to men who are employed by a city as it is with respect to men who are employed by a contractor on work for the city. In each case the intent is to insure those laborers the same amount of wages which it has been found necessary to pay to secure the services of other men at the same sort of work, and to insure the payment to public laborers of the same wages which other men in the same locality, at similar work, are accustomed to receive. The intention of the law is the thing to be sought, and that is to be ascertained from the cause of the statute, and the policy as indicated by prior statutes; and, where that is found, no mere form of words should prevent its adoption, unless the form forbids such a construction. People v. Lacombe, 99 N. Y. 43, 49, 1 N. E. 599. To carry out the intent of the law, it is just as necessary that those rates of wages be paid by the city, as that they should be paid by the contractor. That, clearly, was required by the Laws of 1897; and I can see no reason, as the policy of the law in 1899 is the same, and as the law of 1899 contained substantially the same provisions as did the law of 1897, why it should be construed to mean differently.

For these reasons, it seems to me that the act of 1899 worked no change in the law, and that the duty which the act of 1897 imposed upon the city, to pay the prevailing rate of wages, still exists, and, therefore, that the plaintiff is entitled to recover. The interlocutory judgment should therefore be reversed, with costs, and judgment entered overruling the demurrer, with costs to the plaintiff, with leave to the defendant to withdraw its demurrer and answer over upon payment of costs in this court and in the court below. All concur.