### RYAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

1. MUNICIPAL CORPORATIONS—LABOR LAW—CONSTITUTIONALITY — PREVAILING RATE OF WAGES—COURTS—STARE DECISIS.

Where the court of appeals, after full argument in another case, decided that the labor law (Laws 1897, c. 415, as amended by Laws 1899, cc. 192, 567), requiring municipal corporations to pay employés the prevailing rate of wages, was unconstitutional, the appellate division, in a subsequent action based on such statute, will give effect to such decision, though it was not necessary to the determination of the case decided by the court of appeals.

Laughlin and O'Brien, JJ., dissenting.

Appeal from special term, New York county.

Action by Pierce Ryan against the city of New York to recover the difference between the amount paid for services as an employé in the department of public works and the amount he would have received had he been paid the prevailing rate of wages. From an interlocutory judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Ingle Carpenter, for appellant.
Theodore Connoly, for respondent.

McLAUGHLIN, J. The real question presented on this appeal is whether paragraph 3 of the "Labor Law," so called (chapter 415, Laws 1897, as amended by chapters 192, 567, Laws 1899), is constitutional; and this question, I do not think, is an open one for consideration in this court. The court of appeals, in People ex rel. Rodgers v. Coler, 166 N. Y. 1, 59 N. E. 716, declared that this

statute was unconstitutional, and that settled once for all that question. It is, however, suggested that that decision is not binding upon this court, inasmuch as it was not necessary to the determination of the question there presented. Whether this be true or not, it is perfectly obvious, from the four opinions delivered, that the court deemed it wise to and did consider such question, and a majority of the judges reached the conclusion that the statute was unconstitutional, and they so held; and the orderly administration of justice requires that we should give effect to that decision, irrespective of what our individual views may be upon the subject. That the court intended to and did pass upon the question not only appears from the opinions delivered in that case, but also from subsequent decisions made by it. Thus, in People ex rel. Treat v. Coler, 166 N. Y. 144, 59 N. E. 776, the court said, referring to the Rodgers Case:

We have attempted to show in that case that the facts contained in the defendant's answering affidavit constitute no defense whatever to the relator's claim, since the legislature had no power to enact the statute there invoked. * * * We hold in this case, without further discussion, that the enactment requiring all stone for use in municipal work to be cut, carved, or dressed within this state is subject to the same objections."

And in People ex rel. Lentilhon v. Coler, 168 N. Y. 6, 60 N. E. 1046, the court said:

"The comptroller of the city of New York resisted the payment of the claim on two grounds, based on the relator's alleged violation of the labor law, viz.: (1) In that he compelled or allowed his employés to labor more than eight hours a day; and (2) in that he had not paid his mechanics, workmen and laborers the prevailing rate of wages. This last ground is removed from the case by the recent decision of this court in People ex rel. Rodgers v. Coler, 166 N. Y. 1, 59 N. E. 716, where it is held that the labor law, so far as it related to the prevailing rate of wages, is unconstitutional."

And in People ex rel. North v. Featherstonhaugh, 172 N. Y. 112, 64 N. E. 802, the court said:

"The specifications evidently were prepared before the decision of our court was rendered in the case of People ex rel. Rodgers v. Coler, 166 N. Y. 1, 59 N. E. 716, in which it was held that the provision of the labor law requiring the payment of the prevailing rate of wages was unconstitutional and void. * * * The decision of this court in the Rodgers Case having been previously rendered, the provision of the labor law with reference to the payment of the prevailing rate of wages was not in force at the time the bids were made or contracts executed. * * * A contract, the consideration of which is based upon a statute which is unconstitutional, is, doubtless, void."

And it would seem that this court has heretofore entertained the view that the court of appeals had passed upon this question. Thus, in Meyers v. City of New York, 58 App. Div. 534, 69 N. Y. Supp. 529, it was said, referring to the decision in the Rodgers Case, by the court of appeals:

"One reason why this law was held unconstitutional was that it unduly enhanced the expense of all work done for the city, and it was said that, where the expense of the work is enlarged beyond the actual and reasonable cost under the business conditions, the result was to take the property of the taxpayers of the city, who were finally called upon to bear the expense, without due process of law."

We have, therefore, not only the decision in the Rodgers Case, which clearly and unmistakably declares the law to be unconstitu-

tional, but we have several subsequent declarations by that court reaffirming its previous declarations, and also the view of our own court as to what the court of appeals decided in the Rodgers Case. This being so, it seems to us the question is effectually settled, and it would serve no useful purpose to again open up the discussion.

For these reasons, the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

LAUGHLIN, J. (dissenting).   The plaintiff alleges that prior to the 10th day of May, 1894, he was employed by the defendant, through its department of public works, as "rammer"; that his employment was for no definite or fixed term, and he received wages at the rate of $3 per day; that on said day the labor law (chapter 622, Laws 1894) became operative; that he was thereafter employed in the same capacity without definite term until the 1st day of January, 1900, and received compensation at the rate of $3 per day; that from and after the enactment of the labor law the prevailing rate of wages for this class of work in the city of New York and vicinity was $3.50 per day; that he has duly presented a claim for the difference between the compensation received and the prevailing rate of wages, and payment thereof has been refused   The action is brought to recover the difference between the amount received and the compensation to which the plaintiff claims to be entitled by virtue of the provision of the labor law, which requires, among other things, that laborers, workmen, and mechanics employed upon public work by a city shall be paid "not less than the prevailing rate for a day's work in the same trade or locality" where the work is performed.   If the plaintiff contracted with the city for a lower rate of wages, he may not be entitled to the benefit of the provisions of this statute (Clark v. State, 142 N. Y. 101, 36 N. E. 817), and it may well be that the circumstances are such that by accepting the lower compensation he should be estopped from claiming more, or that he has waived his right to the higher rate of wages; but none of these things appear on the face of the complaint, and therefore they are not presented by the demurrer.   The sole question argued on the appeal is the constitutionality of this provision of the labor law as applied to municipal employés, and both parties are desirous of making this a test case, and are anxious that the question should be considered on its merits.   We are of opinion that the constitutionality of the law affecting such employés is fairly presented, and should be determined.   The court of appeals decided in the case of People ex rel. Rodgers v. Coler, 166 N. Y. 1, 59 N. E. 716, that this provision of the labor law was unconstitutional and void as to contractors with a municipality for the performance of public work.   In the discussion of the question the learned judge who wrote the prevailing opinion expressed the view that it was also unconstitutional as applied to the municipal employés. Inasmuch as that question was not necessarily presented, such discussion was obiter dictum, and, as we have been frequently reminded by that learned court, would not be deemed an authoritative ad-

judication by it. Consequently, it is not binding upon us. With respectful deference, therefore, to the view there expressed, we feel free, and deem it our duty, to decide the question according to our own judgment of the law. Municipal corporations are created by the legislature, and from it they derive their authority, accompanied by duties and obligations to the state. We do not question the doctrine that a city, with respect to its property and private contract rights, enjoys "practically" the same immunity from legislative interference as individuals; but there are well-recognized exceptions to this rule. The legislature may not create a liability against an individual; but it is well settled that it may legalize a claim against a municipal corporation which is founded upon a moral obligation, although the claim be not enforceable either by action at law or suit in equity. Long before there was any civil service provision in the constitution the constitutionality of the civil service laws, which, by regulating to a certain extent restricted cities in matters of appointment and employment, were sustained by the courts; and the municipalities were in some instances against their will compelled to make appropriations for maintaining the local civil service commissions. This would seem inconsistent with the unrestricted constitutional right of the municipality to obtain services and labor at the lowest rate at which it might be able to secure the same. If the municipal officers cannot be restricted with reference to the salaries or wages to be paid, it is difficult to see upon what principle they may be restricted with reference to whom they may appoint or employ. Moreover, the doctrine stated relates to property of the municipality after the same has been acquired, and to contracts after the same have been made. The authority of a municipality to acquire property and make contracts is derived from the legislature, which may impose upon its exercise reasonable conditions, restrictions, and obligations. The statute under consideration does not purport to interfere with existing contract rights, and is applicable only to contracts made after its enactment. It has always been the practice of the legislature to fix the salaries and compensation of the principal officers and employés of municipalities, or to provide that the same shall be fixed, usually within a maximum and a minimum limitation, by some municipal authority. Statutes of this character have never been declared unconstitutional, unless they contravene other provisions of the constitution prohibiting the increase of compensation during a term of office or employment. Furthermore, the constitutionality of statutes fixing the compensation of city employés who are not officers and perform no higher grade of service than those performed by the plaintiff has been sustained. Clark v. State, 142 N. Y. 101, 36 N. E. 817. See, also, McGraw v. City of Gloversville, 32 App. Div. 176, 52 N. Y. Supp. 916; McCanney v. City of New York, 40 App. Div. 482, 484, 58 N. Y. Supp. 138; People v. Board of Police, 75 N. Y. 38. If the legislature itself may constitutionally fix the salaries of employés of a municipality, we see no reason why it may not, instead, provide, as it has done by this statute, that as to employés performing certain classes of work for which there is a prevailing rate of wages in the locality, such prevailing rate of wages shall be

paid.   Prior to the decision in the Rodgers Case, supra, this court frequently affirmed the provision of this statute relating to the payment of the prevailing rate of wages to municipal employés, and enforced the same.   McMahon v. City of New York, 22 App. Div. 113, 47 N. Y. Supp. 1018; McCann v. City of New York, 52 App. Div. 358, 65 N. Y. Supp. 308; McAvoy v. City of New York, 52 App. Div. 485, 65 N. Y. Supp. 274; McCanney v. City of New York, supra.   The McCann and McAvoy Cases, supra, were affirmed by the court of appeals (166 N. Y. 587, 588, 65 N. E. 1125); but that court expressly refrained from passing on the constitutional question, on the ground that it was not properly presented by the record, and had been expressly waived on the argument.   It has also been held (we do not mean to approve or disapprove the doctrine) that it is competent for the legislature to provide that employés of a municipality shall not be required to work more than 8 hours in 24 consecutive hours, "except in case of necessity, in which case such labor shall be paid at the rate of time and one-half for all time in excess of such eight hours" (People v. Warren, 77 Hun, 120, 28 N. Y. Supp. 303), and that section 384h of the Penal Code, which provides that "any person or corporation who, contracting with the state or a municipal corporation, shall require more than eight hours work as a day's labor is guilty of a misdemeanor," is constitutional and valid (People v. Orange County Road Const. Co., 73 App. Div. 580, 77 N. Y. Supp. 16).   It may be here observed that, although the discussion in the prevailing opinion in the Rodgers Case, supra, would seem to indicate the invalidity of the eight-hour provision of the labor law, as well as the provision relating to the prevailing rate of wages, that learned court does not consider such question decided by that decision.   People ex rel. Lentilhon v. Coler, 168 N. Y. 6, 8, 60 N. E. 1046.   Manifestly, one of the purposes of the legislature in enacting the statute under consideration was to insure the payment of living wages to the employés of municipalities whose salaries or compensation was not fixed by the legislature or by the municipal legislative body.   We are asked to hold that the municipality, the creature of the legislature, has the constitutional right, in defiance of the legislative will, to seek out in any part of the land the cheapest grade of mechanics and workmen obtainable, and import them into this city, and employ them on the public works, notwithstanding that the effect may be that such employés will find themselves working at starvation wages, and the citizens and residents of the city whom they displace may become subjects of the public bounty, with a resulting duty on the part of the city, imposed by the legislature, clearly within constitutional limitations, of supporting and maintaining them.   Manifestly, there would be no economy in this, and it would be unfair and unjust both to the imported employés and to the city and its citizen inhabitants.   Such methods have frequently resulted in strikes, entailing untold misery and suffering not only upon the displaced employés, but oftentimes upon the public as well.   The "prevailing rate of wages" does not mean the wages paid by the municipality itself, but the market rate, or the rate generally prevailing in the locality for similar services to

those performed by the classes of employés enumerated in the statute. McMahon v. City of New York, supra. The standard thus prescribed by the legislature is apparently practicable, and the legislature—presumably upon proper investigation—has so determined. Of course, the statute is not controlling where there is no local prevailing rate of wages with reference to similar services. McCanney v. City of New York, supra. It is but right and just that persons engaged in the public service—particularly mechanics, workmen, and laborers, whose compensation is the lowest—should receive as high remuneration as those engaged in similar private employment. Living wages are calculated to insure greater skill and more faithful performance of public services. Furthermore, the public interests are promoted by encouraging laborers, workmen, and mechanics to become permanent residents of the city or vicinity, rather than to leave them in a state of uncertainty and consequent unrest with reference to their tenure of employment and compensation, as would be the case if this statute were declared unconstitutional.

We agree with the learned counsel for the appellant that the expense of other claims of this character, no matter how numerous, should not influence the decision as to the constitutionality of the law. Doubtless the city will be able to protect itself against any unjust claims by proving either a contract for the rate of wages paid or waiver or estoppel.

It follows, therefore, that the interlocutory judgment should be reversed, with costs, and the demurrer overruled, with costs, but with leave to the defendant to interpose an answer upon payment of costs of this appeal and of the demurrer.

O'BRIEN, J., concurs.