PEOPLE ex rel. McLAUGHLIN v. BOARD OF POLICE COM'RS OF CITY OF YONKERS et al.

(Supreme Court, Appellate Division, Second Department. January 9, 1903.)

1. MUNICIPAL OFFICER—REINSTATEMENT—MANDAMUS—SERIOUS QUESTION.
   Mandamus will lie to restore to office one who has been illegally removed therefrom, where no serious question as to the right to the office is involved.

2. SAME—STATUTES—REPEAL.
   Laws 1892, c. 241, § 2, providing that the board of police may retire from service and place on the pension roll any member of the police force at any time after such member shall have attained the age of 60 years, which was an amendment of Laws 1873, c. 163, entitled "An act to organize and establish a police force for the city of Yonkers," was directly repealed by Laws 1898, c. 596, entitled "An act to amend Laws 1873, c. 163," etc.; section 20 providing that "no member of the police force shall be removed except as herein provided until after written charges shall have been preferred against him and the same shall have been publicly heard and examined by said board, after reasonable notice to him thereof by said board," and section 4 providing that captains shall hold office during good behavior.

3. SAME—REMOVAL WITHOUT CHARGES.
   Under such act of 1898 the removal of a police captain who had not reached the age limit, no charges having been made and acted on, was illegal and void, whatever may have been the reasons therefor.

4. SAME—VOLUNTARY DEFENSE—ESTOPPEL.
   Where the one claiming to hold the office of a police captain who had been illegally removed, and such claimant's associates, voluntarily intervened and defended a proceeding to compel such officer's reinstatement, they were concluded from raising the question that quo warranto, and not mandamus, was the proper remedy.

---

¶ 1. See Mandamus, vol. 33, Cent. Dig. § 167.

5. SAME—PEREMPTORY WRIT—RELIEF DEMANDED.

 Where the petition asked for a peremptory writ of mandamus, compel- ling relator's reinstatement to a public office, and the court ordered an alternative writ to try a certain question of fact raised by an allegation of the return, and this question was decided in favor of the relator, it properly held that he was entitled to the office, and granted a peremptory writ, and the objection that only the relief demanded by the alternative writ could be awarded in the peremptory writ was untenable.

6. SAME—RETURN—FACTS DEEMED TRUE—ESTOPPEL.

 The rule that, in an application for a peremptory writ of mandamus, the allegations of fact in the return are to be taken as true, has no ap- plication where the court ordered an alternative writ for the very purpose of having a question of fact raised by the return decided, in the trial of which the defendants participated.

7. SAME—ACCEPTANCE OF PENSION—EFFECT.

 One illegally removed from a public office was not estopped, by ac- cepting his pension under the order of removal, to deny the appointment of his successor.

8. SAME—INJUSTICE TO PENSION FUND.

 A peremptory writ of mandamus reinstating a police officer, and direct- ing the payment of his salary, less the amounts paid him as pension money, and ordering that such latter amount be held by the city treas- urer for the benefit of the pension fund, and constitute a part thereof, was not objectionable on the ground that injustice would be done to such fund.

Appeal from special term, Westchester county.

Mandamus by the people, on the relation of James McLaughlin, against the board of police commissioners of city of Yonkers and others. From a judgment directing the issuance of a peremptory writ, and from an order denying defendants' motion for a new trial, they ap- peal. Affirmed.

The following is the opinion of the court below on the motion to set aside the alternative writ (KEOGH, J.):

 The case differs from nearly all of those cited by the learned counsel for the respondent in support of this application to dismiss the writ, in this: that the person who now occupies the office to which the relator seeks to be restored is a party to this proceeding. The reason commonly given by the courts for refusing to aid by writ of mandamus to restore the relator to an office from which he has been removed, and to which another has been ap- pointed, is that in such a case the person in actual possession of the office and its income is not a party to the proceeding. In this case it appears that Captain Woodruff, the present occupant of the office, was, on the return of the writ and on his own application, permitted to intervene and be made a party to the proceeding, and file an answer to the alternative writ, and since that time he has appeared by counsel at special and trial terms. If a motion to dismiss the writ were the proper proceeding to test the correctness of the relator's practice,—and there is some authority to the contrary,—yet the de- liberate and formal acquiescence of the respondent in this proceeding, as one in which his own and the relator's legal rights might be tested, is sufficient to demand a denial of the motion.

Argued before GOODRICH, P. J., and BARTLETT, WOOD- WARD, HIRSCHBERG, and JENKS, JJ.

I. J. Beaudrias, for appellant Board of Police Com'rs.

Theodore H. Silkman, for appellants Frederick H. Woodruff and others.

James M. Hunt, for respondent.

GOODRICH, P. J. The relator has obtained judgment for a peremptory writ of mandamus requiring the board of police commissioners of the city of Yonkers to reinstate him in the office of captain on the police force. The board, and also Mr. Woodruff, who was appointed in place of the relator, and several other appointees, appealed from the judgment and the order denying a motion for a new trial, with notice that they would bring up for review an order denying a motion to set aside and dismiss an alternative writ in the proceedings.

The relator filed a petition for a peremptory writ, which is dated November 29, 1901, and an amended petition, which is dated December 9th. The only difference between the petitions is that the first one contained an allegation that the relator "was 58 years of age on the 16th day of August last passed," and the amendment added the words "and not before." In the amended petition are the following allegations: The petitioner was only 58 years of age on August 16, 1901. He has been a member of the police force of Yonkers since the incorporation of the city, and was appointed captain on July 29, 1897, and remained such until August 17, 1901, when the board passed a resolution relieving and retiring him from the police force and from the position of captain. His salary as captain was $2,400 per year. He protested against the dismissal and removal "as illegal and not warranted by law, as he is capable of performing the duties" of the office, and has requested and been refused reinstatement. That no charges were pending against him, and no certificate had been given by the police surgeon that he was disabled physically or mentally, or unfit for duty, and that the removal was without authority of law and void. His prayer was for a peremptory writ of mandamus to reinstate him as a member of the police force of the city, and as police captain, and directing the commissioners to pay him salary at the rate of $2,400 per year, up to the issuance of the writ. On December 6th the board filed its return, denying that the relator was only 58 years of age on August 16, 1901, and alleging that he became 60 years of age on that day; that his removal was made pursuant to chapter 163 of the Laws of 1873, as amended by section 2 of chapter 241 of the Laws. of 1892, reading:

"Sec. 2. The board of police may by a majority vote retire from the service and place upon the police pension roll any member of said police force at any time after such member shall have attained the age of sixty years, and from the time of such retirement the member so retired shall be paid from the police pension fund by the trustees thereof during his life time an annual sum not exceeding one-half nor less than one-fourth the full pay of a member of said police force of the rank of the member so retired."

The resolution of the police board reads as follows:

"Resolved, that Captain James McLaughlin be relieved and retired from the force and service of the police department of the city of Yonkers, and placed on the roll of the police pension fund, at an annual pension of twelve hundred dollars, payable monthly during his lifetime. This resolution to take effect at the six p. m. roll call, August 17th, 1901."

The board also denied that the relator protested against his removal, and alleged that he accepted the retirement without protest.

and received the monthly installments of his pension money for the remainder of August, and for September, October, and November, and gave receipts therefor; that shortly after his removal he applied for, and was appointed to, a position under John McCullagh, super-intendent of elections for the metropolitan district, and has been in such service of the state, and received pay therefor.

On December 14th, Frederick H. Woodruff, who had been ap-pointed by the board as captain in place of the relator, and other' persons who had been appointed to subordinate positions on the force, were, on their own motion, made parties to the proceeding, and permitted to intervene and file a return to the writ; it being recited in the order that on the motion of the relator the application for a peremptory writ had been denied, and an alternative writ directed, which was thereupon issued. On January 25th Woodruff and his associates filed their return, alleging that the relator accepted his retirement, and had received without protest the several install-ments of pension money already enumerated; that, relying thereon, Woodruff, who theretofore had been sergeant of police, was on Sep-tember 6th duly appointed captain in place of the relator, and the other individual appellants were duly appointed to vacancies resulting from the appointment of Woodruff, and that they have filled their respective offices, and received the salary thereof; and that the pen-sion fund was not created by taxation, but chiefly by contributions from members of the force, viz., 2 per cent. on their salaries. In January, 1902, new commissioners having been appointed, they also filed a return, which substantially reiterated the allegation of the previous return, and, in addition, set out that the relator did not protest against the resolution of retirement until November 27th, when he addressed a written protest to the previous commissioners; that the commissioners are only trustees of the pension fund, and that the receipt of pension funds by the relator was unlawful; and that he has not offered to return the amounts which he has received. The return also alleges that the relator, by his laches, is estopped to claim that he was under 60 years of age at the date of his removal. On motion of the relator, and against the opposition of the counsel for all the appellants herein, an order was entered on December 14th (Mr. Justice KEOGH), in which, after reciting that it appeared that a question of fact as to the relator's age was raised by the return, it was directed that an alternative writ be issued, directing the board to reinstate the relator or show cause to the contrary. Under the alternative writ, the issue raised as to the age of the relator was heard before Mr. Justice MADDOX and a jury on February 6, 1902, when evidence was presented by both parties. It is not necessary to detail the evidence, as there was sufficient to require a submis-sion to the jury of the question of the relator's age. At the close of the relator's evidence, the defendants moved to dismiss on the grounds that it appeared that the relator was over 60 years of age when he was retired; that he was estopped to question the matter of age, by rea-son of having accepted salary to the date of his removal, and pension moneys thereafter, without protest, and that the city had paid sal-aries to the new incumbents; and that the relator was guilty of

laches. The motion was renewed at the close of the whole evidence, and both motions were denied. The relator then moved for the direction of a verdict that he had not attained the age of 60 years on August 16, 1901, and that he was then 58 years of age, and no more. The justice stated that he would submit these two questions to the jury, and reserve his decision upon the legal questions. The following colloquy ensued:

"Now, the legal questions that you present, if you gentlemen are willing to do so, you may so consent, and I will reserve decision upon them and consider them all. Mr. Silkman: That is satisfactory to the respondents. Mr. Hunt: The legal questions upon the whole case? The Court: The legal questions presented by the motion as made by respondents' counsel. Mr. Hunt: Well, upon that, if your honor please, I can present other proof to the special term upon their alleged claim of waiver, and for that reason I have contended and still insist that the only issue before the jury now, and before this court at this time, is as to age. Whatever other proposition may be asserted upon the case in relation to the whole of the rest of the case upon the captain's application for reinstatement will be asserted, and in a form that can be met by me. I came here to try only the question of age. The Court: In view of Mr. Hunt's attitude, I will deny your motion on the part of respondents, and give you an exception upon each ground, and then you may move after rendition of verdict."

Two questions were then submitted to the jury, who answered the first question, "No," and the second, "58 years." The defendants moved for a new trial on the grounds stated in section 999 of the Code of Civil Procedure, to set aside the verdict upon the ground that there was no question to go to the jury, the question being solely one of law. This motion was denied, and the defendants excepted. Thereafter, on February 13th, the defendants moved before Mr. Justice KEOGH for an order setting aside the alternative writ. This motion was denied in an opinion which is hereto subjoined. The relator then moved for a final order directing the issue of a peremptory writ of mandamus, and the court on April 7th denied the motion, and ordered that the issue, whether the relator accepted and acquiesced in his retirement, be sent to the trial term, to be determined by a jury. The record does not show the proceedings which immediately followed this order, but it is said in the appellants' brief that the cause was put upon the calendar and came to trial before Mr. Justice KEOGH, who, without further trial, vacated the order denying the motion for a peremptory writ of mandamus, and signed a judgment granting such writ. An order was entered at special term, April 21st, made, on motion of the relator, reciting the proceedings with great particularity, and deciding that "the action of the board of police commissioners of the city of Yonkers, attempting to dismiss the relator from the police force, and from his position as police captain, was unauthorized, illegal, and void," and that a peremptory writ of mandamus issue, directing the board of police commissioners to "reinstate James McLaughlin as a member of the police force of the city of Yonkers, and to pay to the said James McLaughlin his salary as police captain," etc. It is from this order, and before the writ had been issued, that the appeal was taken.

The first contention of the appellants is that mandamus is not the proper remedy to restore the relator and to oust the defendant, Woodruff. It is undoubtedly the general rule that mandamus is not the proper remedy to restore to office one who has been illegally removed therefrom, and this has been the rule since People v. Stevens, 5 Hill, 616. But there is an exception to this general rule, which has been recognized in several decisions, and is clearly suggested in People v. Brush, 146 N. Y. 60, 40 N. E. 502, where the writ was denied. In the opinion, the court, referring to cases which held the general doctrine referred to, declared that a writ of mandamus will not be granted upon the application of one claiming title to an office, for the purpose of determining the validity of his claim, when there is a serious question in regard thereto, and another person is holding and exercising the functions of the office; that a serious question was raised by the opposing affidavits, and hence mandamus was not the proper remedy. So, in Re Gardner, 68 N. Y. 467, the court used similar language, and held that mandamus was not the proper remedy where a serious question as to the right of the relator to an office was involved. In People v. Goetting, 133 N. Y. 569, 30 N. E. 968, it was held that the title of one claiming a public office filled by another under color of right may not be determined in a mandamus proceeding, where the question of title turns upon a construction of statutory provisions which are not entirely clear and unambiguous, and that the remedy in such cases is by quo warranto. These decisions are based on the case of People v. Stevens, supra, where the broad doctrine was asserted that, where the title to an office is in dispute, the only method of trying it is by information in the nature of quo warranto. But the two first-cited cases recognize the principle that it is only where there is a serious question to be decided that mandamus is not the proper remedy. In the present case there does not seem to be any serious question. The jury found that the relator was only 58, and not 60, years of age at the time of his removal. The right to remove for arrival at the age of 60 was asserted by the defendants to exist under section 2 of chapter 241 of the Laws of 1892, which reads:

"The board of police may * * * retire from the service and place upon the police pension roll any member of said police force at any time after such member shall have attained the age of sixty years."

This act was an amendment of chapter 163 of the Laws of 1873, entitled "An act to organize and establish a police force for the city of Yonkers," which constituted the city of Yonkers a separate police district, and afforded a complete scheme of organization therefor.

Chapter 596 of the Laws of 1898 is entitled:

"An act to amend chapter 163 of the Laws of 1873, entitled 'An act to organize and establish a police department for the city of Yonkers,' and the acts amendatory thereof."

The first section commences with these words:

"Section 1. Chapter one hundred and sixty-three of the Laws of Eighteen Hundred and Seventy-Three, and the acts amendatory thereof, are hereby amended so as to read as follows:"

Then follows a complete scheme of the police department; some of the provisions being similar to, or exactly like, those appearing in the former act. The provision of section 2 of the act of 1892 does not appear, but there is a provision, evidently in substitution of that section, which, in part, reads:

"Sec. 20. No member of the police force shall be removed except as herein provided until after written charges shall have been preferred against him and the same shall have been publicly heard and examined by said board, after reasonable notice to him thereof by said board."

And section 4 provides that captains shall hold office during good behavior. I do not regard this as merely a repeal by implication of section 2 of the former act. It seems to me to be a direct repeal, not only by its terms, but also by substitution of new provisions in the place of the old. For it says that no member shall be removed except in a special method.

In U. S. v. Tynen, 78 U. S. 88, 92, 20 L. Ed. 153, the court said:

"When there are two acts on the same subject, the rule is to give effect to both, if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates, to the extent of the repugnancy, as a repeal of the first; and even where two acts are not, in express terms, repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was in..ended as a substitute for the first act, it will operate as a repeal of that act."

In Mongeon v. People, 55 N. Y. 613, the doctrine is stated that a statute "is not repealed by implication unless the two statutes are manifestly repugnant and inconsistent, or the later statute covers the whole subject-matter, and was intended as a substitute for the former." All of these conditions are present in the act of 1898. It is repugnant and inconsistent with the statute of 1873, and it covers the whole matter, and it is, in effect, stated to be in substitution for the former act creating the police department. Hence it may be said that the former statute is clearly repealed, both by positive language and by implication. If this is a correct view, there is no "serious question" to prevent the issuing of mandamus in a case where all parties interested are before the court, and that upon their own motion.

It is to the statute of 1898 that we must look for any power of the board to remove the relator, and the method of such removal. The act of 1898 provides that captains, officers, and patrolmen "shall hold office during good behavior," and shall only be removed after written charges, and after opportunity to be heard. No charges having been made and acted upon by the board, the removal of the relator was illegal and void, whatever may have been the reasons therefor.

"Cessante ratione legis, cessat ipsa lex," is a familiar axiom of the law, easily applicable to a method of proceeding. Through most of the cases which hold that the trial of title to public office must be had, not by mandamus, but by information in the nature of quo warranto, runs the reason that the party who claims to be occupying the office is not before the court, so that the question of title between him and his opponent can be fairly tried out. In the present case, Woodruff, who claims to be holding the office of captain, and his

associates, were not brought into court by their adversary, the relator, but they voluntarily applied for permission to intervene and defend; and their return to the writ raised the issue which was tried by the jury, and found adversely to them. They have had their day in court, and it is not the policy of the law to subject a litigant to a second trial of the same question. The appellant Woodruff is concluded by his own act from raising the question that quo warranto is the only method of trying his title to the office which, as it appears, he is unlawfully occupying. It follows that the relator is entitled to be restored to the office of police captain of the city of Yonkers, and to be inducted into that office.

The appellants, however, contend that only the relief demanded by the alternative writ of mandamus can be granted in the peremptory writ. The answer to that proposition is that the petition asked for a peremptory writ, although the court ordered an alternative writ for the purpose of having a trial of the question raised by the allegation of the return that the relator was 60 years of age when he was retired. This question of fact has been decided by the verdict, and, as there was no other question of fact, the court properly held that the relator was entitled to the office, and granted a peremptory writ. It is true that in an application for a peremptory writ the allegations of fact in the return are to be taken as true, but that rule has no application to the present case, inasmuch as the court ordered an alternative writ for the very purpose of having the question of fact decided, and in the trial of that question the defendants participated, thus waiving the claim that there was a disputed question of fact.

The appellants further claim that the relator is estopped to deny the appointment of his successor, because he accepted his pension under the order of removal, and thereby admitted the legality of such removal, and the board has acted thereon, and appointed his successor, and paid him the salary. It has been repeatedly held that the acceptance by a public official of a less than the legally established rate of pay does not estop him to claim the legal rate. People v. Board of Police, 75 N. Y. 38; Kehn v. State, 93 N. Y. 291; Clark v. State, 142 N. Y. 101, 36 N. E. 817. In the present case, moreover, there is evidence that the relator received the pension under protest. The relator himself was not examined upon the subject on his direct examination, but the matter was brought out upon his cross-examination by the counsel for the appellant Woodruff, and other witnesses corroborated his statement; and, while there was testimony to contradict it, such testimony was of the "non mi recordo" character,— negative not positive. Besides, I do not think that the doctrine of estoppel has any application to cases where the title to public office is in question. To apply it in such cases would be against public policy. If a municipal corporation, acting through its officers, appoints a person to public office ultra vires, such appointment is unauthorized, and neither the corporation, nor the person directly injured, is estopped to set up the invalidity of the appointment. While counsel have not referred us to any authorities upon this question, I find analogy in the case of Day Land & Cattle Co. v. State, 68

Tex. 526, 4 S. W. 865, where the court said (page 553, 68 Tex., and page 879, 4 S. W.):

"The other ground of estoppel claimed is that as the officers of the government, who have power to issue patents in proper cases, issued the patents under which the appellant claims, and construed the law as authorizing them so to do, this construction is conclusive upon the state after the land has gone into the hands of a purchaser for value. The state cannot be estopped by the acts of any of its officers, done in the exercise of a power not conferred upon them, any more than it can be bound by contracts made by its officers which they were not empowered to make. The powers of all officers are defined and conferred by law, and of these all persons who deal with them must take notice. Acts done in excess of the powers conferred are not official acts."

Mr. Bigelow, in his treatise on Estoppel (5th Ed., p. 466), after reviewing somewhat inconsistent decisions, says:

"It appears, however, to be agreed by the better authorities of the present time that, if the act undertaken was in and of itself ultra vires of the corporation, no act of the body can have the effect to estop it to allege its want of power to do what was undertaken."

In Moore v. Mayor, etc., 73 N. Y. 238, 246, 29 Am. Rep. 134, it was said:

"The unauthorized acts of city authorities—that is, those ultra vires, in the sense that they are not within the general powers conferred—are not binding on the corporation, and corporations are not estopped by acts of corporate agents strictly ultra vires."

I do not mean to say that one holding a public office may not be estopped by his acts in certain cases,—as, for instance, in an action for the recovery of his salary. In such an action he is the person solely interested. But the state itself is interested where its sovereign rights have been interfered with by usurpation of public office by a person other than the one lawfully entitled thereto. In an action or proceeding to determine the title to an office, the doctrine of estoppel cannot be applied.

As to the further point that injustice will be done to the pension fund, it is sufficient to say that the order directs the payment of the relator's salary, less the amounts paid him as pension money, and orders that such latter amount shall be held by the city treasurer for the benefit of the police pension fund, and constitute a part thereof. I am very clearly of opinion that no error has been committed, and that the order directing a peremptory writ of mandamus should be affirmed.

Final order affirmed, with costs. All concur; BARTLETT, J., in result.